Carlisle Stuart FAUVER, Plaintiff,

v.

Patti Jill HANSEN, Defendant.

Nellie Alexandra HANSEN, By and Through her Guardian Ad Litem, Nancy OLSEN, Plaintiff and Appellant,

v.

Carlisle Stuart FAUVER, Defendant and Appellee.

No. 890249–CA.

Court of Appeals of Utah.

Dec. 18, 1990.

Brian M. Barnard (argued), Utah Legal Clinic, Salt Lake City, for appellant.

Harry H. Souvall (argued), McRae & Deland, Vernal, for appellee.

R. Paul Van Dam, State Atty. Gen., Blaine Ferguson, Salt Lake City, for amicus curiae.

Before GARFF, JACKSON and NEWEY [1], JJ.

GARFF, Judge:

Appellant, Nellie Alexandra Hansen appeals an order dismissing her complaint for child support filed against her father, Carlisle Stuart Fauver, appellee. We reverse and remand.

 Nellie Alexandra Hansen, was born to Patti Jill Hansen and Carlisle Stuart Fauver on July 9, 1986. Her parents were never married to each other. Less than three months after her birth, her parents entered into a stipulation purporting to terminate the father's parental rights and obligations, including his obligation to pay child support. The stipulation was approved and incorporated into an order signed on October 2, 1986. About two years later, on November 14, 1988, the child, through a guardian ad litem, filed a separate action for support. The father moved to add the mother as a party plaintiff. The mother, in turn, filed a petition to modify child support based upon a change in circumstances. The two cases were then consolidated based on a stipulation. The child moved for summary judgment on the issues of temporary support and whether the order was void as a matter of law. These motions were denied, along with the mother's motion for temporary support, in a memorandum decision issued March 17, 1989. The court then signed an order on April 10, 1989 dismissing the child's complaint for support and declaring that the parents' stipulation was not void as against public policy.[2] The child appeals the order of dismissal.

## JURISDICTION

We first consider the threshold issue of whether the district court had subject matter jurisdiction to permanently terminate the father's parental rights and obligations, including his obligation of support. We accord no particular deference to the lower court's conclusions of law. *Grayson Roper Limited Partnership v. Finlinson*, 782 P.2d 467, 470 (Utah 1989). We review for correction of error the district court's conclusion that it had subject matter jurisdiction to hear the case.[3]

---

1. Robert L. Newey, Senior Juvenile Court Judge, *sitting by special appointment pursuant* to Utah Code Ann. § 78–3–24(10) (Supp.1990).

2. Public policy requires that the responsibility for the support of a child be clearly delineated at all times. Natural parents have the primary obligation of support. That obligation can be transferred through a proper adoption procedure to a licensed child placing agency or to adoptive parents. However, to permit a parent to abrogate that obligation through an agreement with the other parent in consideration of no further contact with the child or the contemplation of a possible adoption at some future time creates the possibility of a break in the

chain of support responsibility. If the custodial parent becomes incapacitated, or for some other reason unable to support the child, as is the case here, and the noncustodial parent has no continuing obligation, then the responsibility would fall to the state, which would be contrary to public policy.

3. "Subject matter jurisdiction is the power and authority of the court to determine a controversy and without which it cannot proceed." *Thompson v. Jackson*, 743 P.2d 1230, 1232 (Utah Ct.App.1987) (per curiam). Subject matter jurisdiction cannot be waived. *Transworld Systems, Inc. v. Robison*, 796 P.2d 407 (Utah Ct.App. 1990) (per curiam). *See also Curtis v. Curtis,*

The following language in the order is cited to establish that the court intended to terminate or accept relinquishment of the father's parental rights and obligations: he "signed in open Court a Consent to Termination of Parental Rights;" the mother is awarded "permanent custody;" the father waives "any claims to custody;" he "forfeits all legal rights to the child," including the right to an income tax deduction; he may make no demands to spend time with the child; "any interaction between father and daughter must be upon the complete approval of [the mother];" he waives any right to challenge any transfer of custody incident to the death of the mother; the mother has the right to designate a custodian in the event of her death; the father shall not be held legally or financially responsible for the child; the mother "waives all future child support payments or any other form of support from [the father];" the father "waives and disclaims any right acc[ru]ing under the parent-child relationship between him and said minor child;" he "waives any notice or service upon him of any petition for adoption involving [the child] and said adoption may be granted without his participation;" and finally, "any and all obligations between [the mother] and [the father] that may have arisen as a result of the birth of the minor child that have not been resolved are hereby terminated."

The order contains specific language and sufficient examples to establish as its purpose the termination of the father's parental rights and obligations.

Utah courts may obtain jurisdiction to terminate parental rights and obligations via two routes. The first is pursuant to Utah Code Ann. § 78–3a–16(1)(f) (Supp. 1990), which, except as otherwise provided, gives exclusive original jurisdiction to the juvenile court to "terminate the legal parent-child relationship, including termination of residual parental rights and duties as defined." *See J.C.O. v. Anderson*, 734 P.2d 458, 464 (Utah 1987) (affirming juvenile court's termination of parental rights notwithstanding fact that adoption petition was pending in district court.)

The second route to obtain jurisdiction to terminate the parent-child relationship was pursuant to Utah Code Ann. § 78–30–4 (1987).[4] Section 78–30–4(1) grants a district court jurisdiction to accept a relinquishment of parental rights only pursuant to an adoption.

This statutory provision notwithstanding, appellee went to the district court to voluntarily relinquish his parental rights and obligations in what he erroneously perceived to be an adoption proceeding. Here, the stipulation and order contemplated that an adoption could take place in the future: "Petitioner hereby waives any notice or service upon him of any petition for adoption involving Nellie Alexandra Hansen and said adoption may be granted without his participation." However, the original proceeding was not an adoption proceeding: no petition for adoption was filed, no adoptive parents were parties, and no mention was made of the adoption code. Further, case law and the current adoption statute provide that the birth parents' rights and duties do not dissolve until "the time of the adoption." Utah Code Ann. § 78–30–11 (1987 and Supp.1990); *Riding v. Riding*, 8 Utah 2d 136, 329 P.2d 878 (Utah 1958) (where second husband had stipulated with first husband to adopt first husband's child and later reneged, first husband was not relieved from continuing support payments).

█ Even if the district court had relied on the adoption statute for jurisdiction,

789 P.2d 717 (Utah Ct.App.1990) (regarding interstate custody dispute); *In re Estate of McLaughlin*, 754 P.2d 679, 681–82 (Utah Ct.App. 1988) (regarding probate dispute).

**4.** This section was repealed in 1990 and replaced with Utah Code Ann. § 78–30–4.1 through –4.10 (Supp.1990). Like its predecessor, the new version provides for a claim for termination only pursuant to an adoption, and in no way empowers a district court to terminate parental rights and obligations outside of an adoption proceeding.

which it did not, the father would have had a continuing support obligation up until any final adoption decree was entered. In addition, the parties and the court would have had to comply with all the relevant procedures in the statute. Here, no adoption petition was ever filed and no adoption decree was ever entered, so the district court was never empowered to dissolve the father's parental rights and obligations.

■■ The father claims the court had jurisdiction to terminate his support obligations pursuant to Utah Code Ann. § 78–45a–5 (Supp.1990). This statute, part of the Uniform Act on Paternity, includes the following language:

The district court has jurisdiction of an action under this act and all remedies for the enforcement of judgments for expenses of pregnancy and confinement for a wife or for education, necessary support, or funeral expenses for legitimate children apply. The court has continuing jurisdiction to modify or revoke a judgment for future education and necessary support.

As previously noted, the stipulation and order contemplated *termination* of the parent-child relationship and possible future adoption. As such, section 78–45a–5 has no legal application because it contains no provision pertaining to termination of rights and obligations. Nor does the statute have conceptual application: the primary purpose of the Uniform Paternity Act is. to require a child's father to pay expenses of pregnancy and child support, not to avoid such. See Utah Code Ann. § 78–45a–5(1); *J.W.F. v. Schoolcraft,* 763 P.2d 1217, 1219–20 (Utah Ct.App.1988), *rev'd on other grounds,* 799 P.2d 710 (1990). Here, the father wrongly invokes the Act in an attempt to avoid having to support his child. Because neither the policy of the Act nor its jurisdictional procedures apply to this case, we hold that the Uniform Paternity Act does not endow a district court with subject matter jurisdiction to terminate the parent-child relationship or to permanently relieve a parent of his or her support obligations.

■ We emphasize that termination of parental rights and obligations is a serious procedure, which must include a hearing where the court can consider the best interests of the child. *Hills v. Hills,* 638 P.2d 516, 517 (Utah 1981). In the juvenile court, termination can take place "only after a hearing is held specifically on the question of [termination]." Utah Code Ann. § 78–3a–48(2) (1987). And in instances of voluntary termination, the juvenile court must find that termination is in the best interests of the parent and the child. Utah Code Ann. § 78–3a–48(5) (1987). Likewise, in the district court, where termination may take place only pursuant to an adoption, the court must hold a hearing attended by the adoptive parent or parents and the child, and must find that the interests of the child will be promoted by the adoption. Utah Code Ann. § 78–30–8 (1987 and Supp. 1990).

Finally, the Utah Supreme Court has already held that parents cannot stipulate to a termination of parental rights and obligations, even in instances where that stipulation is incorporated into a court decree. *Hills,* 638 P.2d at 517. "The right to support from the parents belongs to the minor children and is not subject to being bartered away, extinguished, estopped or in any way defeated by the agreement or conduct of the parents." *Id.*

We therefore hold that the district court did not have subject matter jurisdiction to hear the issues presented in the parties' original petition: namely the permanent termination of the father's parental rights and obligations. We therefore vacate the district court's original order of termination dated October 2, 1986.

CHILD'S ACTION TO SEEK SUPPORT

■■ In reversing the original order of termination, we are left then with the issue of whether the minor child, via her guardian ad litem, has standing to maintain a cause of action against her father for support. Utah courts have long held that the right to receive child support is an unalienable right, belonging to the child, and cannot be bartered away by the child's parent

or parents. *Hills v. Hills,* 638 P.2d 516, 517 (Utah 1981); *Hansen v. Gossett,* 590 P.2d 1258, 1260 (Utah 1979) (right to support belongs to the child); *State Division of Family Services v. Clark,* 554 P.2d 1310, 1311–12 (Utah 1976) (child support duty is continuing and right to receive it is unalienable); *Baggs v. Anderson,* 528 P.2d 141, 143 (Utah 1974) (a father cannot divest himself of the obligation to support, nor defeat the child's right to support). The fact that one parent may not be under a current obligation to pay child support does not terminate that parent's responsibility to pay support in the future. *Woodward v. Woodward,* 709 P.2d 393, 394 (Utah 1985).

In addition to the case law cited above, the right of a child to receive support and to maintain an action for support is found in the Utah Code. Utah Code Ann. § 78–45–3 (1987) ("Every man shall support his child"); Utah Code Ann. § 78–45–4.2 (1987) ("Nothing contained [within the Uniform Civil Liability for Support Act] shall act to relieve the natural parent or adoptive parent of the primary obligation of support"). More specifically, the Uniform Act on Paternity acknowledges the right of a child to maintain an action for paternity and for liabilities thereof, including the reasonable expenses of pregnancy, confinement, education, necessary support, or funeral expenses. Utah Code Ann. § 78–45a–2 (Supp.1990).

## CONCLUSION

We therefore vacate the order purporting to terminate the father's obligation of support and his other rights and obligations of parenthood and we hold that the minor child has the right to maintain an action for support. We remand the issue of support to the lower court to determine the proper amount consistent with this opinion and applicable law.

Vacated in part, reversed in part, and remanded in part.

JACKSON and NEWEY, JJ., concur.