Walter Douglas PERRY,
Appellant/Cross–
Appellee,

v.

Kelli Bridgett NEWKIRK, n.k.a. Kelli
Bridgett Madlock, Appellee/Cross–
Appellant.

Nos. S–5161, S–5168.

Supreme Court of Alaska.

April 8, 1994.

Sharon L. Gleason, Rice, Volland and Gleason, P.C., Anchorage, for appellant/cross-appellee.

William T. Ford, Anchorage, for appellee/cross-appellant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

### I. FACTS AND PROCEEDINGS

Walter Douglas Perry (Doug) and Kelli Newkirk began living together in 1979. In 1980 their daughter Amanda was born. The parties continued to live together with Amanda until 1984, when they separated. Doug and Kelli never married.

Doug filed a domestic relations complaint in 1985 seeking joint custody of Amanda and a determination that neither party should pay child support. Kelli counterclaimed seeking full custody of Amanda and increased child support. In the course of the litigation an interim order was entered granting sole custody of Amanda to Kelli and requiring Doug to pay $800 per month in child support.

The superior court next ordered a custody investigation. The custody investigator recommended that Kelli retain sole legal custody of Amanda. Two weeks later Doug and Kelli signed a stipulation which purported to terminate Doug's parental rights concerning Amanda and to relieve Doug prospectively of his obligation to pay child support. The custody investigator recommended approval of this stipulation and Judge Victor Carlson approved it on January 30, 1986.

Five years later, on June 3, 1991, Kelli filed a motion for child support for Amanda. Doug opposed the motion on the grounds that his parental rights and obligations were terminated in 1986. The motion was heard before the probate master. The master characterized Kelli's motion as a Civil Rule 60(b) motion to set aside the termination order and recommended denial of the motion on the basis that it was not brought within a reasonable time. Kelli filed objections to the report and a hearing followed before Judge Elaine Andrews.

Judge Andrews set aside the termination order and ordered Doug to pay child support. Doug appeals, claiming: (1) the trial court erroneously set aside the 1986 termination order; and (2) the trial court erred computing child support. Kelli filed a cross-appeal, also claiming that the trial court erred in computing child support.

### II. DISCUSSION

#### A. The Termination Order

Concerning the termination order, Doug makes two points. First, he argues that Judge Carlson's order giving effect to his voluntary relinquishment of parental rights was lawful. Second, he argues that even if Judge Carlson's order approving the stipulation under which he voluntarily relinquished his parental rights was unlawful, it had become unchallengeable by 1991, as a matter of procedure. We now turn to the first of these contentions.

#### 1. The validity of the termination order.

■ In 1986 the Alaska Statutes provided for the termination of parental rights only in the context of child in need of aid proceedings under AS 47.10.080 and adoption proceedings under AS 25.23.180.[1] Our focus in the present case is on AS 25.23.180. The language of subsection (c) is dispositive of the present issue. Courts may terminate the

---

1. AS 47.10.080(c)(3) states that if the court finds a minor to be a child in need of aid, it shall

(3) by order, upon a showing in the adjudication by clear and convincing evidence that

parent and child relationship either "in connection with an adoption proceeding under this chapter" or in "a proceeding under AS 47.10," the child in need of aid chapter.

> there is a child in need of aid under AS 47.10.-010(a)(2) as a result of parental conduct and upon a showing in the disposition by clear and convincing evidence that the parental conduct is likely to continue to exist if there is no termination of parental rights, terminate parental rights and responsibilities of one or both parents and commit the child to the department or to a legally appointed guardian of the person of the child....

AS 25.23.180 as it existed in 1986 provided:

> (a) The rights of a parent with reference to a child, including parental right to control the child or to withhold consent to an adoption, may be relinquished and the relationship of parent and child terminated in or before an adoption proceeding as provided in this section.
>
> (b) All rights of a parent with reference to a child, including the right to receive notice of a hearing on a petition for adoption, may be relinquished and the relationship of parent and child terminated by a writing, signed by the parent, regardless of the age of the parent, a copy of which shall be given to the parent,
>
> (1) in the presence of a representative of an agency taking custody of the child, whether the agency is within or outside of the state or in the presence and with the approval of a court within or outside of this state in which the minor was present or in which the parent resided at the time it was signed, which relinquishment may be withdrawn within 10 days after it is signed or the child is born, whichever is later; and the relinquishment is invalid unless it states that the parent has this right of withdrawal; or
>
> (2) in any other situation if the petitioner has had custody of the minor for two years, but only if notice of the adoption proceeding has been given to the parent and the court finds, after considering the circumstances of the relinquishment and the long continued custody by the petitioner, that the best interest of the child requires the granting of adoption.
>
> (c) The relationship of parent and child may be terminated by a court order issued in connection with an adoption proceeding under this chapter or a proceeding under AS 47.10:
>
> (1) on the grounds specified in AS 47.10.-080(c)(3); or
>
> (2) on the grounds that a parent who does not have custody is unreasonably withholding consent to adoption, contrary to the best interest of the minor child.
>
> (d) For the purpose of an adoption proceeding under this chapter, a decree issued by a court of competent jurisdiction in this or another state terminating all rights of a parent with reference to a child or the relationship of parent and child dispenses with the required

Since this was neither an adoption proceeding nor a child in need of aid proceeding, the termination order was not authorized by statute.[2]

> (1) consent by that parent to an adoption of that child; and
>
> (2) notice of a proceeding to that parent unless otherwise required by this section.
>
> (e) A petition for termination of the relationship of parent and child made in connection with an adoption proceeding may be made by
>
> (1) either parent if termination of the relationship is sought with respect to the other parent;
>
> (2) the petitioner for adoption, the guardian of the person, the legal custodian of the child, or the individual standing in parental relationship to the child;
>
> (3) an agency; or
>
> (4) any other person having a legitimate interest in the matter.
>
> (f) Before the petition is heard, notice of the hearing on the petition and opportunity to be heard shall be given the parents of the child, the guardian of the person of the child, the person having legal custody of the child, and, in the discretion of the court, a person appointed to represent any party.
>
> (g) Notwithstanding the provisions of (b) of this section, a relinquishment of parental rights with respect to a child, executed under this section, may be withdrawn by the parent, and a decree of a court terminating the parent and child relationship under this section may be vacated by the court upon motion of the parent, if the child is not on placement for adoption and the person having custody of the child consents in writing to the withdrawal or vacation of the decree.

2. Doug argues that subsection (g) of section 180, which allows a relinquishment to be withdrawn and a decree of termination to be vacated if the child is not "on placement for adoption," implies that a voluntary termination of parental rights outside of an adoption is contemplated. He argues: "By making a specific provision in this subsection for situations where a child is *not* on placement for adoption, the relinquishment statute clearly contemplates that a voluntary relinquishment may be taken even when an adoption is not imminent." In our view this reads too much into subsection (g). The circumstances under which the relationship of parent and child may be terminated are defined under subsection (c). Structurally, subsection (g) does not purport to modify or expand these circumstances. Subsection (g) can be read in a manner consistent with subsection (c) if (g) is taken to relate to situations where "in connection with an adoption proceeding" a child has not yet been placed, or a placement has been revoked.

Parental termination proceedings were unknown at common law. Stephen B. Presser, *The Historical Background of the American Law of Adoption*, 11 J.Fam.L. 443 (1972). This means that in the absence of statutory authorization there can be no termination of parental rights and obligations.[3] It follows that the 1986 termination order was erroneously entered since it was not authorized by statute.

## 2. Is the termination order subject to attack under Civil Rule 60(b)?

a. Kelli argues that the termination order was not only invalid but void as beyond the subject matter jurisdiction of the trial court. She contends that therefore the trial court was authorized to set aside the order under Civil Rule 60(b)(4), noting that void judgments may be attacked independent of the one-year and the reasonable time requirements of the final paragraph of Civil Rule 60(b).[4] As authority for the proposition that the judgment is void, Kelli relies on the case of *Fauver v. Hansen*, 803 P.2d 1275 (Utah App.1990).

In *Fauver*, unmarried parents agreed to a stipulation under which the father's parental rights and obligations were terminated. The stipulation was approved by court order. Some two years later, the child through a guardian ad litem filed an action seeking child support from the father, contending that the order approving the stipulation for termination of parental rights and obligations was void. The trial court found that the original order was not void. The court of appeals reversed, finding that the trial court lacked subject matter jurisdiction which it defined as "the power and authority of the court to determine a controversy and without which it cannot proceed." *Id.* at 1276 n. 3. The court held that termination jurisdiction existed under Utah law only in proceedings in juvenile court or in the context of an adoption.

Doug acknowledges in his reply brief that a judgment may be considered void under Civil Rule 60(b)(4) if the court that rendered it lacked subject matter jurisdiction.[5] He argues, however, that the trial court did not lack subject matter jurisdiction as the superior court is the court of general jurisdiction in this state with authority in all civil and criminal matters. AS 22.10.020(a). Doug also specifically relies on the case of *Carroll County Dep't of Social Servs. v. Edelmann*, 320 Md. 150, 577 A.2d 14 (1990).

*Edelmann* is another case involving unmarried parents where the father was initially permitted, with the consent of the mother, to relinquish his parental rights and responsibilities. On appeal, the Court of Appeals of Maryland reversed, holding, as we do today, that "[a]bsent specific statutory authorization which does not now exist in this State" the

---

3. Courts of other jurisdictions have reached this conclusion in similar circumstances. *See Carroll County Dep't of Social Servs. v. Edelmann*, 320 Md. 150, 577 A.2d 14, 26 (1990); *Fauver v. Hansen*, 803 P.2d 1275, 1277, 1278 (Utah App. 1990); *Fleming v. Brown*, 581 So.2d 202, 203 (Fla.Dist.Ct.App.1991); *Patrick v. Patrick*, 59 Ill. App.3d 11, 16 Ill.Dec. 309, 374 N.E.2d 1084 (1978); *cf., S.J. v. L.T.*, 727 P.2d 789, 795 (Alaska 1986) (holding involuntary termination of parental rights absent statutory authorization unlawful).

4. Concerning the inapplicability of time limits to void judgments, Kelli cites *Burrell v. Burrell*, 696 P.2d 157, 163 n. 11 (Alaska 1984), where we stated that Rule 60(b)(4) motions "would not be subject to the same time constraints as a motion made under 60(b)(5) or 60(b)(6).... '[A] motion under this part of the rule differs markedly from motions under the other clauses of Rule 60(b).... [T]here is no time limit on an attack

on a judgment as void.'" (Quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2862 at 197 (1973)).

5. In his initial brief, Doug cited *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974), for the proposition that "[a] judgment is void only where the court lacked personal jurisdiction over the defendant or if the court acted in a manner inconsistent with due process of law." While this statement is an accurate summary of the language used in the *Aguchak* opinion, that language was underinclusive. Voidness under 60(b)(4) also encompasses the concept of lack of subject matter jurisdiction or, to use the earlier term for the same concept, lack of "competency." *See Holt v. Powell*, 420 P.2d 468, 471 (Alaska 1966); Restatement of Judgments § 7 (1943); Restatement (Second) of Judgments § 11 reporter's note (1982).

trial court of general jurisdiction lacked authority to terminate the parental relationship. *Id.* 577 A.2d at 26. The Maryland court also observed that this lack of authority did not amount to a failure of subject matter jurisdiction, which it defined as "the *power* to render a judgment over that class of cases within which a particular one falls. . . ." *Id.* at 169, 577 A.2d at 23. Observing that "application of this principle depends on how one defines the generic 'class of cases,'" the Maryland court concluded that the trial court's lack of statutory authority did not rise to a failure of subject matter jurisdiction.[6] *Id.*

Two additional cases support the proposition that the judgment is void. In *Fleming v. Brown,* 581 So.2d 202, 203 (Fla.App.1991), a decree terminating parental rights based on a stipulation entered in child support enforcement proceedings was held to be unauthorized by statute and therefore void for lack of jurisdiction. Similarly, in *Patrick v. Patrick,* 59 Ill.App.3d 11, 16 Ill.Dec. 309, 374 N.E.2d 1084 (1978), an order terminating parental rights entered in post-divorce decree litigation based on a stipulation was held to be beyond the trial court's subject matter jurisdiction. The court went on to hold that the order should be construed to be an order prohibiting visitation—a lesser-included characteristic of an order terminating parental rights. *Id.* 16 Ill.Dec. at 310, 374 N.E.2d at 1085. As so limited the order was not invalid but was subject to modification at any time based on a material change in circumstances. *See also In re Marriage of Goodarzirad,* 185 Cal.App.3d 1020, 230 Cal.Rptr. 203 (5th Dist. 1986) (holding that court acted in excess of jurisdiction when it approved agreement absolving father of duty to pay child support in exchange for his agreement to terminate parental rights).

b. Our view is that a statutorily unauthorized decree terminating parental rights and obligations is beyond the subject matter jurisdiction of the court. Our reasons follow.

■ Regarding subject matter jurisdiction, the Restatement (Second) of Judgments states: "A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action." Restatement (Second) of Judgments § 11 (1982). This definition is not especially helpful, for much depends on how the term "type of controversy" is defined. If the term applies to "orders terminating parental rights and obligations" in general, then subject matter jurisdiction in the superior court would be found to exist. If, on the other hand, greater detail is employed and the type of controversy is defined as "orders terminating parental rights and obligations in divorce, custody and child support proceedings," then subject matter jurisdiction does not exist.

The commentary to the Restatement suggests that this is not an area where a verbal formulation is likely to be of much use and that case matching may be a more valuable tool. The commentary states, after giving a number of illustrations: "In all such situations, the matter in question can plausibly be characterized either as going to subject matter jurisdiction or as being one of merits or procedure. The line between the categories is not established through refinement of terminology but through the cumulation of categorizing decisions into a pattern." *Id.* § 11 cmt. e.

The commentary also suggests that there is a policy choice involved in "how far to go in the direction of policing the boundaries of a court's subject matter jurisdiction" when the cost is to allow a "belated attack after [a case] has gone to judgment." *Id.* In making this choice, the commentary refers to section 12 of the Restatement, which deals generally with the subject of when the question of whether one forum lacked subject matter jurisdiction can be contested in another forum. The commentary to section 12 states, relevant to the present case, that interests of society external to the parties may play an important role:

> The interests primarily at stake in resolving this question are governmental and

**6.** The court's conclusion in *Edelmann* that there was not a lack of subject matter jurisdiction was dictum as the case was presented on direct appeal. The error was reviewable whether or not it amounted to a failure of subject matter jurisdiction.

societal, not those of the parties. By hypothesis the parties had earlier opportunity to litigate the question of jurisdiction and thereby to protect their interests in the observance of the rules governing competency. They also had their day on the merits, even if before a body whose authority is now in doubt. To allow one of them to raise the question of subject matter jurisdiction after judgment is in the effect to make him a public agent for enforcing the rules of jurisdiction....

The question therefore is whether the public interest in observance of the particular jurisdictional rule is sufficiently strong to permit a possibly superfluous vindication of the rule by a litigant who is undeserving of the accompanying benefit that will redound to him. The public interest is of that strength only if the tribunal's excess of authority was plain or has seriously disturbed the distribution of governmental powers or has infringed a fundamental constitutional protection.

*Id.* § 12 cmt. d.

The strong public interest in having parents support and nurture their children, and the third-party interest which children have in receiving support and nurture from their parents are reasons for enforcing the rules of jurisdiction in the present case.[7] Further, as noted above, most courts which have been presented with cases like this have found that a parental termination order as a solution to a custody or child support dispute is a remedy beyond the subject matter jurisdiction of the court and therefore void. The categorization approach advocated in the Restatement commentary suggests that we should align our court with those authorities. Thus we hold that the superior court's order purporting to terminate Doug's parental rights and obligations is void for want of subject matter jurisdiction and therefore subject to attack under Civil Rule 60(b)(4).

■ c. Shorn of its parental termination aspect the order may be seen as an order relieving Doug of his responsibility to support his child and his right to visit her. *See Patrick,* 16 Ill.Dec. at 310, 374 N.E.2d at 1085. As such, the order would not be void for want of jurisdiction. With respect to the question of support, we held in *Malekos v. Yin,* 655 P.2d 728 (Alaska 1982), that agreements between divorced parents to waive the child support obligation of one of the parents were valid and enforceable, but retractable prospectively at the option of the custodial parent. In *Cox v. Cox,* 776 P.2d 1045 (Alaska 1989), we held that the parties' freedom to waive child support as reflected in *Malekos* had been superseded by the promulgation of the child support guidelines rule, Alaska Civil Rule 90.3, in 1987.

■ Considering the 1986 order to be an order reflecting the parties' agreement that Doug would not have to pay child support, the agreement was retractable at the option of Kelli. It was also reviewable by the court at any time upon a showing of a substantial change of circumstances. AS 25.24.170. Adoption of the child support guidelines rule was itself a substantial change in circumstances. AS 25.24.170(b); *Charlesworth v. Child Support Enforcement Div.,* 779 P.2d 792 (Alaska 1989); *see* Alaska R.Civ.P. 90.-3(h)(1). Thus, the question of child support was properly reopened by Kelli's motion of June 3, 1991, either under a retraction theory, following *Malekos,* or based on the substantial change in circumstances reflected by the promulgation of the child support guidelines.

We turn now to the question of whether the child support award entered by Judge Andrews should be upheld.

### B. *The Child Support Award*

■ Judge Andrews awarded Kelli child support to be paid by Doug in the sum of

**7.** This state's public policy is to hold every parent financially responsible for his or her children. *See* Civil Rule 90.3; *Matthews v. Matthews,* 739 P.2d 1298 (Alaska 1987) (stating that parent is obligated by statute and at common law to support his or her children); *Malekos v. Yin,* 655 P.2d 728 (Alaska 1982) (same). In addition, a fundamental public policy concern in this area is the best interest of the child. An order terminating one parent's rights and obligations outside of child in need of aid or adoption contexts may sacrifice the child's long-term needs for financial and moral support to advance the parents' litigation goals.

$470.30 per month from January 1, 1992, until September 1, 1993. At that point, when Doug's other child was to enter first grade, Doug's obligation to pay child support for Amanda would increase to $627.06 per month. Judge Andrews ruled that no retroactive child support would be awarded. Doug's adjusted annual income for Civil Rule 90.3 purposes was calculated to be $47,030. If the formula set forth in Civil Rule 90.-3(a)(2)(A) for the child support of one child were applied to this income, a monthly award of $783.83 would be called for. Judge Andrews found that Doug's justifiable reliance on the court order constituted good cause to deviate from the formula.[8] She did not, however, hold an evidentiary hearing at which questions relating to good cause could be litigated.

Both parties contend that the child support award should be vacated and that this case should be remanded for an evidentiary hearing on the facts relevant to a good cause determination. We agree that such a hearing is required since there appear to be genuine issues of material fact. At the evidentiary hearing the parties should be allowed to present evidence on the issues related to good cause and present their arguments based on the evidence which is adduced. We make no comment on the present record as to either Doug's or Kelli's arguments concerning the existence of good cause.

■ In addition, Kelli, on cross-appeal, contends that the trial court erred in not ordering child support retroactive to at least August 1, 1987, when Civil Rule 90.3 was promulgated. She also argues that since she did not ask for back child support Judge Andrews should not have ruled on the question at all.

While Kelli is correct that she did not ask that child support begin before June 1, 1991, Judge Andrews ordered that this issue be addressed by the parties. At the argument before the court, Kelli's counsel stated that she did not seek past child support "at this point," but indicated that she did not wish to waive her right to claim past due child support at some future point. Her counsel also argued that the concepts of laches and estoppel would not apply to past due child support, contending that these are equitable defenses which do not apply to the legal requirement to pay child support.

In our view, Judge Andrews did not err in injecting the issue of child support arrearages into the case. The claim for arrearages was closely related to the claim for prospective child support. On the merits of whether Judge Andrews erred in ruling that child support arrearages would not be awarded, arrearages prior to Kelli's motion of June 3, 1991, would not have been appropriate. As noted above, the 1986 order was void as a termination of parental rights and obligations, but was neither void nor invalid as an order approving the parties' agreement that Doug would not have to pay child support. As so limited, the order was subject to modification, but only from the time of the motion. *Malekos; see also* Civil Rule 90.3.[9] On remand, Judge Andrews should either enter an order requiring Doug's child support to begin when Doug was served with the motion, or enter findings and conclusions as to why such a commencement point should not be used.

8. Civil Rule 90.3(c)(1) states: "The court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied." When good cause is found, the same subsection requires the court to "specify in writing the reason for the variation, [and] the amount of support which would have been required but for the variation...."

9. Civil Rule 90.3(h)(2) states: "Child support arrearages may not be modified retroactively. A modification which is effective on or after the date that a motion for modification is served on the opposing party is not considered a retroactive modification." Although this language literally speaks only to arrearages, the commentary suggests that child support may not be modified retroactively: "The prohibition against retroactive modification limits both requested decreases and increases in child support. Thus, either the custodial or the obligor parent should promptly apply for a modification of child support when a material change in circumstances occurs." Cmt. x. We interpret the rule in this way.

 

## III. *CONCLUSION*

Insofar as the 1986 order purported to terminate Doug's parental rights and obligations, it was void for want of subject matter jurisdiction and was therefore properly set aside under Civil Rule 60(b)(4). Insofar as the 1986 order merely approved the parties' agreement that Doug would not have to pay child support the order was valid, but subject to modification. The child support award entered by the trial court is VACATED and this case is REMANDED to the trial court for an evidentiary hearing concerning whether good cause exists for not following the child support formula of Civil Rule 90.3, and for further action in accordance with this opinion.

BURKE, J., not participating.