**Irvin K. DIXON, Appellant,**

v.

**Francine D. POUNCY, Appellee.**

**No. S–7645.**

Supreme Court of Alaska.

May 21, 1999.

---

Melinda D. Miles and Darin B. Goff, Miles & Goff, P.C., Anchorage, for Appellant, and Irvin K. Dixon, pro se, Anchorage.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

COMPTON, Justice.

## I. *INTRODUCTION*

Irvin Dixon appeals the superior court's denial of his Civil Rule 60(b) motion to set aside the portion of a 1993 Decree of Divorce declaring him the father of C.D. and ordering him to pay child support. We conclude that the superior court abused its discretion when it relied solely on res judicata to deny Irvin's Rule 60(b) motion. Because we cannot as a matter of law affirm the order denying Irvin's Rule 60(b) motion on alternate grounds, we reverse it and remand for further proceedings.

## II. *FACTS AND PROCEEDINGS*

Irvin Dixon and Francine Pounce [1] married in March 1983. On January 30, 1988,

---

1. Francine is referred to as "Francine Pouncy" throughout the Appellee's brief. Francine signed

Francine gave birth to C.D. Irvin's name appears on C.D.'s birth certificate as her father.

In February 1988 Francine began to receive Aid to Families with Dependent Children (AFDC). She periodically received AFDC support for C.D. from February 1988 until November 1996. In December 1988 the Child Support Enforcement Division (CSED) notified Irvin that he should pay $292 per month in child support and $146 per month towards his accrued debt. The Department of Revenue (DOR) upheld the order requiring Irvin to pay the support and arrears.

In August 1992 Irvin filed for divorce. In his complaint for divorce Irvin stated: "There is one child born the issue of this marriage, namely: [C.D.], whose date of birth is January 30, 1988." He asked for joint legal custody of C.D. Francine's answer denied the allegation that there was a child born the issue of the marriage.

Shortly after Irvin filed for divorce, Irvin and Francine stipulated to an interim custody and visitation order. The order stated that Francine and Irvin had joint legal custody of C.D., but that Francine had physical custody. The order gave Irvin visitation rights. A number of problems arose concerning Irvin's visitation of C.D. In October Irvin moved for an order to show cause why Francine should not be held in contempt for violating the order granting him visitation rights. In support of his motion, he stated that Francine was denying that he was the father of C.D. and that Francine had demanded blood tests be taken. The superior court entered a judgment against Francine for violating the terms of the visitation order. It ordered her to pay a fine and attorney's fees.

In July 1993 the superior court issued a Decree of Divorce. The court found that C.D. was a child born the issue of the marriage. The court also found that it was in C.D.'s best interests that the parties have "joint legal custody pursuant to the terms of the oral settlement agreement." The court ordered Irvin to pay child support of $50 per month pursuant to Civil Rule 90.3 and to pay one half of C.D.'s uninsured healthcare expenses.

In September Irvin moved for an order holding Francine in contempt of court for again violating the Decree of Divorce by denying him visitation of C.D. Francine opposed the order to show cause and moved to modify Irvin's visitation. In support of her opposition and motion to modify, Francine stated that there was evidence that Irvin had abused C.D. In November the superior court found Francine in contempt "for her bad faith and willfull [sic] refusal to permit visitation between June 17, 1993 and November 15, 1993." The court further ordered that an appropriate adult be present at all times during visits between Irvin and C.D.

Following continued disputes over visitation and custody, Irvin, Francine, and the child submitted to single-locus probe DNA testing for paternity. The tests excluded Irvin as the father of the child. On January 22, 1996, Irvin moved the superior court, pursuant to Rule 60(b), to set aside the portion of the 1993 Decree of Divorce "which determined that he was the father of [C.D.]." Irvin's only evidence in support of setting aside the Decree was the 1995 DNA test which concluded that he was "excluded from being the biological father of [C.D.]." Francine did not oppose the motion. The court treated his motion as a request for relief under Rule 60(b)(6) and denied it. The court held that "the plaintiff's motion for relief from judgment is DENIED as barred by the doctrine of res judicata." The court stated that the Decree of Divorce "was a final judgment of the court which adjudicated Irvin K. Dixon the father of [C.D.]." Furthermore, the court held that the doctrine of res judicata does not require that a claim have been actually litigated; rather, res judicata can also bar a party from relitigating claims that he could have litigated during the prior proceedings. The court found that Irvin had had a clear opportunity to fully litigate the issue of paternity during the divorce proceedings, and thus Irvin was precluded from

a release form allowing DNA tests to be performed as "Francine Pouncy." Francine's driver's license states that her name is "Francine Pounce." Francine signed her November 1993 sworn affidavit as "Francine Pouncé." We refer to her as Francine.

relitigating the issue now. This appeal followed.

In January 1997 CSED moved the superior court to modify the 1993 Decree of Divorce to comply with Civil Rule 90.3. CSED alleged that the administrative order requiring Irvin to pay $146 per month[2] in child support was a material change warranting a modification of the portion of the Decree of Divorce that required Irvin to pay only $50 per month in support. In 1997 CSED contacted the court records division to determine the status of its motion to modify the divorce decree. It learned that Irvin was appealing the 1996 order denying his Rule 60(b) motion. CSED then moved this court for leave to participate as the appellee in Irvin's appeal. We granted CSED's motion.[3]

## III. DISCUSSION

### A. Standard of Review

■ This court reviews an order denying a Rule 60(b) motion to determine if the trial court abused its discretion. *See Benedict v. Key Bank of Alaska*, 916 P.2d 489, 491 (Alaska 1996). Reversal of the trial court "is justified only if this court concludes the trial court was clearly mistaken." *Grothe v. Olafson*, 659 P.2d 602, 611 (Alaska 1983). However, the superior court's determination of whether the doctrine of res judicata applied is a legal question "reviewable under the 'independent judgment' standard." *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994). "All questions of law are reviewed de novo with this court adopting the rule of law that is most persuasive in light of precedent, reason and policy." *Id.*

### B. Irvin's Rule 60(b) Motion Should Not Have Been Denied Based on Res Judicata.

■ The superior court's order denying Irvin's Rule 60(b) motion was based solely on the ground that res judicata barred him from

litigating the issue of paternity. Res judicata consists of both claim preclusion and issue preclusion. Claim preclusion "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party . . . and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.10[1][a] (3d ed. 1997). A claim includes "not only those matters actually addressed by the prior judgment, but those matters which could have been raised in that action." *Id.* § 131.10[3][c], at 131–19. Issue preclusion, on the other hand, "prevents relitigation of issues actually litigated and necessary for the outcome of the prior suit, even if the current action involves different claims." *Id.* § 131.10[1][a], at 131–19.

The superior court decided that res judicata barred Irvin from seeking relief from the judgment on claim preclusion grounds. The court stated that "[a] fundamental tenet of res judicata doctrine is that it precludes relitigation between the same parties not only of claims which were raised in the initial proceeding but also of those relevant claims which could have been raised then." Furthermore, the court found that "the issue of paternity was raised in the complaint and answer, that Irvin K. Dixon had a clear opportunity to fully litigate the issue of paternity and is now precluded from relitigating the issue."

■ Irvin's motion for relief from the Decree of Divorce pursuant to Rule 60(b) was a direct attack on the Decree. *See, e.g., Moore*, at § 131.02[1][a] (3d ed. 1997) ("A direct attack on a judicial proceeding is an attempt to have it corrected, annulled, reversed, vacated or declared void. . . . A litigant may also seek to have the judgment vacated under [Rule 60(b)]."). Direct attacks on judgments, such as motions for relief pursuant to Rule 60(b), "are not subject

---

2. The sequence of events leading up to CSED determining that Irvin owed $146 per month in support is uncertain. A 1988 Notice and Finding of Financial Responsibility stated that Irvin owed $292 per month in ongoing support and $146 per month toward his accrued debt. A 1996 Notice of Proposed Adjustment in Child Support stated

that: "CSED proposes an adjustment in the child support amount, in accordance with the child support guidelines, to: $146 for 1 child."

3. We refer to the appellee throughout this opinion as CSED.

to the claims [sic] preclusion doctrine." *Id.* Only if "a party ... fails to utilize the appropriate statutory procedure for direct attack on a judgment will [he] be barred by the claim preclusion doctrine from asserting a new claim in a different proceeding to accomplish the same end." *Id.* Many courts have concluded that direct attacks, such as attacks on judgments pursuant to Civil Rule 60, cannot be barred on res judicata grounds. *See, e.g., Watts v. Pinckney,* 752 F.2d 406, 410 (9th Cir.1985) (holding that Rule 60(b)(4) attack on the judgment was direct, not collateral, and that "[t]he doctrine of res judicata does not apply to *direct* attacks on judgments."); *Jordon v. Gilligan,* 500 F.2d 701, 710 (6th Cir.1974) ("[T]he doctrine of 'res judicata does not preclude a litigant from making a direct attack [under Federal Rule 60(b)] upon the judgment before the court which rendered it.'") (quoting 1B James Wm. Moore et al., *Moore's Federal Practice* ¶ 0.407, at 931 (2d ed. 1973)) (alteration in original).

The superior court cited *Calhoun v. Greening,* 636 P.2d 69 (Alaska 1981) as its authority for dismissing Irvin's Rule 60(b) motion on res judicata grounds. *Calhoun* is distinguishable. Calhoun first moved pursuant to Rule 60(b) "to set aside the judgment [against him] as obtained in violation of [his] due process rights." *Calhoun,* 636 P.2d at 71. In December 1978 the motion was denied; Calhoun did not appeal the denial. *See id.* In August 1979 opposing counsel moved to set aside a conveyance of real property Calhoun had made. *See id.* In his opposition to the motion, Calhoun moved again for relief from the judgment. *See id.* Calhoun argued that "his second [Rule 60(b)] motion raises issues not addressed by his first .... [because the first] simply asserted denial of due process, while this motion claims a violation of Civil Rule 55(c)." *Id.* at 72. In affirming the denial of Calhoun's second Rule

60(b) motion, this court stated: "[A] fundamental tenet of the res judicata doctrine is that it precludes relitigation between the same parties not only of claims that were raised in the initial proceeding, but also of those relevant claims that could have been raised then." *Id.* This court concluded that Calhoun had had a "full opportunity to present his Rule 55(c) argument as part of his initial [Rule 60(b)] motion; his failure to raise it then precludes him from raising it now." [4] *Id.*

Res judicata thus barred Calhoun from bringing a *second* Rule 60(b) motion, because he could have asserted the issue that the second motion raised in his first Rule 60(b) motion.[5] By contrast, Irvin's Rule 60(b) motion for relief from the judgment ordering him to pay support for C.D. was his first motion for relief. Irvin has not filed a previous Rule 60(b) motion in which he could have raised the issue of paternity.

We conclude that it was error to deny Irvin's motion on res judicata grounds. The superior court misread *Calhoun* as standing for the proposition that res judicata can bar Rule 60(b) motions generally. *Calhoun* does not stand for that proposition. We conclude that the rule that res judicata cannot bar a direct attack upon a judgment applies to this case. Res judicata should not bar Irvin's direct attack, pursuant to Rule 60(b), upon the Decree of Divorce. Moreover, we conclude that it was error to dismiss Irvin's Rule 60(b) motion without evaluating his claim to determine whether Irvin was entitled to relief under any of the six subsections of Rule 60(b).

C. *This Court Cannot, as a Matter of Law, Affirm the Superior Court's Order Denying Irvin's Rule 60(b) Motion.*

Although it was an error to deny Irvin's Rule 60(b) motion on res judicata grounds,

---

4. Justice Matthews dissented. Although Calhoun had brought two Rule 60(b) motions, Justice Matthews concluded that res judicata is inapplicable to direct attacks upon a judgment. He stated: "I believe that the majority has erred in basing today's opinion on the doctrine of res judicata. The doctrine of res judicata relates to the effects of a judgment in a subsequent separate lawsuit.... Res judicata has no application to a direct, as opposed to collateral, attack on a

judgment." *Calhoun v. Greening,* 636 P.2d 69, 76 (Alaska 1981) (Matthews, J., dissenting) (citations omitted).

5. *See also Satterfield v. Satterfield,* 221 Kan. 15, 558 P.2d 108, 109 (1976) ("A second or successive [Rule 60(b)] motion on the same grounds is thereafter barred by the doctrine of res judicata.").

we may affirm the order denying relief if we conclude that Irvin is not entitled as a matter of law to relief under any · section of Rule 60(b). Because the denial was based solely on res judicata, and contained no findings as to whether Irvin could have succeeded in his Rule 60(b) motion were it not barred, we can affirm the order denying Irvin relief only if, as a matter of law, he cannot satisfy the requirements of any of the six subsections of Rule 60(b).[6]

■ Irvin's motion did not specify that he was seeking relief from the judgment pursuant to Rule 60(b)(1), (2), (3), (4), (5), or (6). Rather, it merely stated that he was seeking relief from the judgment. While the superior court considered Irvin's motion to be pursuant to Rule 60(b)(6), we can affirm its denial of the motion only if we conclude that Irvin is not entitled to relief under any section of Rule 60(b) as a matter of law. We address whether Irvin could be granted relief under sections (1) through (5).[7]

1. *Irvin is ineligible for relief pursuant to Rule 60(b)(1), (2), and (3) as a matter of law.*

Rule 60(b)(1)-(3) provides in part:

[T]he court may relieve a party . . . from a final judgment, order, or proceeding for . . . :

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence . . . ;

(3) fraud . . . , misrepresentation, or other misconduct of an adverse party;

. . . .

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders. . . .

The superior court entered the Decree of Divorce on July 7, 1993. Irvin moved for relief from the Decree under Rule 60(b) on January 22, 1996. We conclude that Irvin is time barred from obtaining relief from the judgment pursuant to Rule 60(b)(1), (2), or (3) as a matter of law.

2. *Irvin is ineligible for relief pursuant to Rule 60(b)(4) as a matter of law.*

■ Rule 60(b)(4) provides in part:

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:

. . . .

(4) the judgment is void.

This court has held that a judgment is void under Rule 60(b)(4) "if the court that rendered it lacked subject matter jurisdiction." *Perry v. Newkirk*, 871 P.2d 1150, 1153 (Alaska 1994). Additionally, a judgment can be void if the court lacked personal jurisdiction or if the court acted in a manner inconsistent with due process. *See id.* at 1157 n. 5 (stating that it is an accurate summary of *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974) to say that Rule 60(b)(4) encompasses lack of personal jurisdiction and inconsistencies with due process of law). We conclude that the order denying Irvin relief from the Decree of Divorce is not void, and

---

6. *See Carlson v. State*, 598 P.2d 969, 973 (Alaska 1979) ("Although we have determined that the decision of the superior court was incorrect as a matter of law, we may nevertheless uphold that decision if there is any other ground which, as a matter of law, would support the result reached by the superior court."); *see also Lowe v. Lowe*, 817 P.2d 453, 457 & n. 9 (Alaska 1991) (considering whether to affirm relief from judgment granted under Rule 60(b)(6) on alternate grounds of fraud upon the court under Rule 60(b)(3), despite fact that superior court "did not find that there was a fraud perpetuated upon the court," but declining to do so because this court was unable to hold that the circumstances complained of rose to the level of fraud-upon-the-court as a matter of law); *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 67 n. 16 (Alaska 1977) ("Even if the trial court's decision

as to Paragraph J were incorrect as a matter of law, this court on appeal may uphold the trial court's decision if there exist independent grounds which as a matter of law support the trial court's conclusion.").

7. For Irvin to be granted relief pursuant to Rule 60(b) he must have a meritorious defense to the Decree of Divorce, which states that he is the father of C.D. and orders him to pay support. *See McCall v. Coats*, 777 P.2d 655, 659 (Alaska 1989) ("In order to justify relief under Civil Rule 60(b) a meritorious defense to the matter on which the judgment or order rests must typically be presented."). The DNA test showing that Irvin is not C.D.'s biological father provides Irvin with a potentially meritorious defense.

Irvin is thus ineligible for relief pursuant to Rule 60(b)(4) as a matter of law.

    3. *Irvin may be eligible for relief pursuant to Rule 60(b)(5).*

■ Rule 60(b)(5) provides in part:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons:

    . . . .

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;

    . . . .

The motion shall be made within a reasonable time. . . .

This court has stated that Rule 60(b)(5) "requires 'some change in conditions that makes continued enforcement inequitable.'" *Dewey v. Dewey*, 886 P.2d 623, 627 (Alaska 1994) (quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2863, at 207 (1973)). The DNA test results revealing that Irvin is not C.D.'s biological father present a change in conditions that could make the continued enforcement of a support order inequitable. However, a party must move for relief pursuant to Rule 60(b)(5) within a reasonable time.

■ Irvin brought his motion for relief two and a half years after the divorce decree was entered. As evidenced by his complaint for divorce, Irvin believed that C.D. was his biological daughter. His belief was reinforced by the 1993 divorce settlement. The agreement, read in open court, referred to Francine as C.D.'s "mom" and Irvin as C.D.'s "dad." Furthermore, Francine agreed on the record that the settlement agreement was "[absolutely] in the best interest of [C.D.]." These facts, coupled with the evidence that Irvin thought that C.D. was his biological daughter, and that Francine was alleging that he was not in fact C.D.'s father merely to keep him from seeing C.D., would support a finding that Irvin challenged paternity within a reasonable time. They thus

compel the conclusion that challenging paternity two and a half years after the divorce was not unreasonable as a matter of law. *See Lowe*, 817 P.2d at 459 (remanding case because this court could not "say that a motion for relief made four and a half years after entry of judgment is per se unreasonable."); *see also Taylor v. Haven*, 91 Ohio App.3d 846, 633 N.E.2d 1197, 1200 (1993) ("We are not prepared to hold that a twelve-year interval between a final judgment and a movant's Civ.R.60(B) motion is per se unreasonable.").

■ On the merits, we note that the Decree of Divorce orders Irvin to pay $50 per month to support C.D. until she turns eighteen years old, dies, marries, or otherwise becomes emancipated. The DNA test results which reveal that Irvin is not C.D.'s biological father may make the prospective application of this judgment inequitable. *See Crowder v. Commonwealth ex rel. Gregory*, 745 S.W.2d 149, 151 (Ky.App.1988) ("Justice is the court's constant destination, relentlessly pursued. It is not arrived at where a court in a paternity action adjudicates a man to be the father of a child while knowing full well that the biological relationship has been clearly disestablished."). Furthermore, a motion pursuant to Rule 60(b)(5) seeking relief from the prospective application of a judgment requires the court to balance the equities and decide whether relief is warranted. *See Propst v. Propst*, 776 P.2d 780, 784 & n. 9 (Alaska 1989) (balancing children's reliance on a father's post-majority support with the father's generosity in paying college expenses while reasonably believing himself not under an enforcement obligation to do so and concluding that "the equities in this situation require that [the father's] motion for relief from judgment be granted"). We cannot say as a matter of law that a court balancing the equities of this case could not find that they warrant relief. Therefore, we conclude that we cannot, as a matter of law, affirm the superior court's denial of Irvin's motion for relief from the judgment, because relief pursuant to Rule 60(b)(5) may be warranted in this situation.[8]

8. Because we conclude that relief may be warranted pursuant to Rule 60(b)(5), we need not

## IV. CONCLUSION

We conclude that the superior court abused its discretion when it denied Irvin's Rule 60(b) motion solely on res judicata grounds. Furthermore, we conclude that we cannot affirm the order denying Irvin's motion for relief on alternate grounds.[9] We thus REMAND this case to the superior court to determine whether Irvin is entitled to relief from the Decree of Divorce under Rule 60(b)(5). Specifically, the superior court must determine whether seeking relief two and a half years after the Decree of Divorce was unreasonable. If it is not, the court must determine whether prospective application of the portion of the Decree requiring Irvin to support C.D. is inequitable.

MATTHEWS, Chief Justice, with whom FABE, Justice, joins, dissenting.

In my view Dixon is not entitled to relief under either Civil Rule 60(b)(5) or (6). Where a change in conditions is reasonably foreseeable at the time of judgment Rule 60(b)(5) relief must be denied. Relief under Rule 60(b)(6) is unavailable to undo a party's deliberate litigation choice. That Dixon was not the father of C.D. was not only foreseeable at the time of trial, it was pled. Dixon made a deliberate litigation choice to contest Pouncy's claim that he was not C.D.'s father. Therefore Dixon does not qualify for relief under either section.

The principles on which this case should be decided are well illustrated by our decision in *Dewey v. Dewey*, 886 P.2d 623 (Alaska 1994). Dewey was a stepfather who entered into a settlement stipulation in which he agreed to pay child support. Later, when payments got too burdensome, he moved for relief from this obligation. We held that relief was not available under Rule 60(b)(5) or (6).

Concerning Rule 60(b)(5), we wrote that the change in conditions on which the motion is based must not have been reasonably foreseeable when the judgment was entered. *Id.* at 627.

With respect to Rule 60(b)(6), we stated that this subsection does not afford relief from a party's deliberate litigation choices: "Relief under Civil Rule 60(b)(6) is inappropriate when a party takes a deliberate action that he later regrets as a mistake." *Id.* at 628 (citing *Hartland v. Hartland*, 777 P.2d 636, 645 (Alaska 1989)).

It was reasonably foreseeable at the time of the divorce that Dixon was not the father of C.D. He alleged in his complaint that C.D. was "born the issue of this marriage." In her answer Pouncy specifically denied this allegation. With the issue thus joined Pouncy demanded blood tests. After the superior court entered a judgment for sanctions against her for violating a visitation order, Pouncy relented and stipulated to Dixon's paternity. Given this history a reasonable person in Dixon's position would believe that there was a serious question about his paternity. It follows that such a person should reasonably anticipate the possibility that his assertion of paternity was wrong and his wife's assertion that he was not the father was right. Therefore Dixon has not met the requirement of Rule 60(b)(5) that changed conditions not be reasonably foreseeable at the time of judgment.

Dixon chose to contest his wife's denial of his paternity. His choice was deliberate, and he prevailed. He therefore cannot meet the absence of deliberate choice requirement of Rule 60(b)(6).

---

address the possibility of relief pursuant to Rule 60(b)(6). As we have previously held, relief under Rule 60(b)(6) may only be granted if relief under the preceding sections is not possible. *See, e.g., Hartland v. Hartland*, 777 P.2d 636, 645 (Alaska 1989) ("Relief under clause (6) is not available unless the other clauses are inapplicable.").

9. Contrary to any implication in the dissent, we do not hold that Irvin may be entitled to relief under Rule 60(b)(6). We hold only that he may be entitled to prospective relief under Rule 60(b)(5). Further, contrary to the statement in the dissent, Irvin did not "ma[k]e a deliberate litigation choice to contest Pouncy's claim that he was not C.D.'s father" prior to entry of the Decree of Divorce. He asserted paternity, which Francine initially denied. Thereafter, in all pleadings and in statements made in open court at the time of entry of a Decree of Divorce, Francine treated the child as though she were a child of the marriage; Francine never again formally denied paternity. Thus there was no issue to litigate; Francine conceded the issue.

I would affirm the decision of the superior court on the above grounds. But there are two additional reasons why Rule 60(b)(5) and (6) relief is not available.

First, relief under Rule 60(b)(5) requires a significant change in either factual conditions or in law. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). Obviously there has been no legal change. It seems wrong to consider the DNA test as a factual condition. The relevant factual condition in this case is Dixon's nonpaternity. It has not changed since the judgment. The DNA test is merely newly discovered evidence of this condition. Relief on the grounds of newly discovered evidence is available on a Rule 60(b)(2) motion only if the motion is filed within the one-year time limit and the evidence could not have been discovered before trial by due diligence. Relief on the grounds of newly discovered evidence is not available on a Rule 60(b)(5) or (6) motion.[1]

Second, Dixon's claim is essentially that of mistake. He thought he was C.D.'s father, but he was wrong. Relief on the grounds of mistake is available under Rule 60(b)(1) and is subject to a one-year time limitation. It is not available under Rule 60(b)(6). We made this point in *Dewey* and it seems applicable here as well:

> Relief under Civil Rule 60(b)(6) is inappropriate when a party takes a deliberate action that he later regrets as a mistake. Here, Michael deliberately agreed to support Tisha but now regrets the consequences.... Michael is essentially alleging a "mistake." Post-judgment relief for a mistake is governed by Civil Rule 60(b)(1), and is time-barred if not brought within one year.

886 P.2d at 628 (footnote and citation omitted).

---

1. *Strack v. Pelton*, 70 Ohio St.3d 172, 637 N.E.2d 914 (1994), supports these propositions. The court held that a genetic test establishing nonpaternity was newly discovered evidence, but no relief from the decree was available because the motion was made more than one year after the judgment. Relief was not available under the Ohio counterparts to Rule 60(b)(5) and (6) because they do not apply to newly discovered evidence claims. The Ohio court stated the policy rationale for its decision in terms that are also applicable here:

> We are not unaware that our decision in effect declares as static a state of facts that reliable scientific evidence contradicts. Nonetheless, there are compelling reasons that support such a decision. A claim under Civ. R. 60(B) requires the court to carefully consider the two conflicting principles of finality and perfection. In *Knapp v. Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 1353, 1356 (1986), this court declared,
>
> > [f]inality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system's ability to resolve disputes. Perfection requires that every case be litigated until a perfect result is achieved. For obvious reasons, courts have typically placed finality above perfection in the hierarchy of values.
>
> Finality is particularly compelling in a case involving determinations of parentage, visitation and support of a minor child.

*Strack*, 637 N.E.2d at 916.