**John William WITT, Plaintiff–Appellant,**

v.

**Kimberly Denise WITT, Defendant–Appellee.**

Court of Appeals of Tennessee,
Eastern Section.

March 28, 1996.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 3, 1996.

W. Gerald Tidwell, Jr., Chattanooga, for Plaintiff–Appellant.

Charles W. Burson, Attorney General and Reporter and James H. Tucker, Jr., Assistant Attorney General, for Defendant–Appellee.

## OPINION

McMURRAY, Judge.

This is a most unusual case. The parties were married on September 26, 1987. During the marriage, one child, Dustin Levi Witt, was born. On May 11, 1989, the plaintiff filed an action for divorce. On November 15, 1989, a final decree was entered by the court dissolving the marriage on the grounds of irreconcilable differences and approving a marital dissolution agreement. The marital dissolution agreement contained, among other things, the following provision:

The parties stipulate and agree that a child was born to Kimberly Denise Witt on or about July, 1988, named Dustin Levi Witt. By her signature to this agreement, Kimberly Denise Witt hereby states that John William Witt is not the father of said child and that she was not living with John William Witt when said child was conceived. Kimberly Denise Witt hereby waives any and all child support payments which would be due and owing by John William Witt, and by this agreement and signature hereto, John William Witt acknowledges that he is not the father of said child and hereby forfeits all parental rights to said child. Based upon this agreement and the signatures of the parties, the parties stipulate and agree than Kimberly Denise Witt shall have the exclusive care, custody and control of said minor child and that John William Witt is hereby forever relieved of any parental responsibilities toward the said Dustin Levi Witt.

Apparently, after the divorce, Mrs. Witt (now Samuelson) applied for and received AFDC benefits from the State of Tennessee. On February 8, 1991, the State on relation of Kimberly Witt, filed an action in the Marion County Circuit Court to seeking to impose child support obligations on Mr. Witt and to establish paternity. The case came on for hearing before the child support referee in Marion County. The referee ordered the parties to undergo blood tests and comparisons for the purpose of establishing or disproving parentage. Pending the outcome of the blood tests, the referee ordered the plaintiff-respondent to pay child support on a temporary basis of $50.00 per week plus the clerk's commission thereon. Retroactive support was reserved for a later hearing.

The respondent, Mr. Witt, took exception to the referee's findings and requested a hearing before the Circuit Judge. A hearing was held on February 14, 1992, in the Marion County Circuit Court. The Marion County Circuit Court ordered the case transferred to the Circuit Court of Hamilton County for the purpose of allowing the Honorable Robert M. Summitt to determine if there were any grounds to set aside his previous order determining that John William Witt was not the father of the child in question.

On December 6, 1993, the State of Tennessee, as assignee of Kimberly Denise Witt Samuelson, filed a motion in the Hamilton County Circuit Court asking the court to set aside that part of its previous order approv-

ing the marital dissolution agreement insofar as it related to paternity of the child. An order was entered in the Hamilton County Circuit Court appointing a *Guardian Ad Litem* for the minor child.

On June 23, 1994, the court, pursuant to Rule 60, Tennessee Rules of Civil Procedure, entered an order setting aside that part of its original judgment dealing with the paternity of the minor child. Further, the court ordered blood tests to ascertain paternity.

On March 20, 1995, an agreed order was entered which, among other things, recited that based upon blood test results, the respondent, John William Witt, "concedes the issue of paternity and admits that he is the father of the child."

The respondent, John William Witt, appeals from the judgment of the trial court granting relief under Rule 60, T.R.C.P. He complains only of the court's action in setting aside a portion of the divorce decree which he claims was done without an evidentiary hearing to establish grounds under Rule 60, claiming that relief from the previous order of the court was time barred.

■■ We do not find it necessary under the circumstances of this case to address the issue as presented by the appellant. We find and hold that the original provisions of the marital dissolution agreement relating to paternity and child support are void as against the public policy of this state and that the court may, *sua sponte*, set aside a void order or a void agreement incorporated within an order or decree.

■ Decrees relating to child custody and support are generally viewed as conclusive on the facts in existence at the time the decision was entered. *See Nichols v. Nichols,* 792 S.W.2d 713, 715–16 (Tenn.1990). However, the entry of a decree does not necessarily preclude the later consideration of material facts that were not fully developed in the earlier proceeding because of concealment, fraud, duress, or other violations of public policy by one of the parties. *Rowles v. Reynolds,* 29 Tenn.App. 224, 196 S.W.2d 76, 79 (1946); 4 Family Law Practice (MB) § 52.02(1)(h) (1989). *See also Faircloth v. Locke,* an unreported opinion of this

court (1991). We are prepared to go one step further and hold that a violation of the public policy of this state by *both* parties justifies the court in voiding the offending parts of the decree, where, on its face, the decree shows a violation of the public policy of this state. An evidentiary hearing, under such circumstances, is not necessary. No amount of evidence can transform a void order, agreement or decree into one possessing any legal efficacy.

It seems abundantly clear that since time immemorial it has been the public policy of this state that a parent is under a duty to support his children. Indeed, it has been declared a criminal offense by the legislature for a parent to knowingly fail to support his children. Further evidence of the public policy of the State as established by our legislature may be found in T.C.A. §§ 36–2–101, et seq., (paternity proceedings) and T.C.A. §§ 36–5–101 requiring parents to support their children and by the adoption of the child support guidelines promulgated by the Department of Human Services.

We have found no authority in this jurisdiction and none has been called to our attention which has dealt with the legal quagmire into which this case has fallen. We do find cases, however, that are analogous and in which principles of law therein found can be applied to this case as well. In *Wright v. Holland,* 1993 WL 49560 an unreported opinion of this court issued in 1993 (Lexis 168), the court addressed an issue relating to the responsibilities of a natural parent for child support after surrender for the purposes of adoption. The adoption did not take place. In *Wright,* the court citing *Fauver v. Hansen,* 803 P.2d 1275 (Utah App.1990), stated that "[t]o permit a parent to abrogate that obligation [for support] through an agreement with the other parent ... of a possible adoption at some future time creates the possibility of a break in the chain of responsibility.... [I]f the non-custodial parent had no continuing obligation to support the minor child simply because he had executed an adoption consent form, then the responsibility to support the child should the custodial parent becomes incapacitated or unable to support the child, as she did in *Fauver,*

would fall on the state and, therefore, the result would be a violation of public policy."

We find an even stronger statement in *Straub v. Todd*, 626 N.E.2d 848 (Ind.App. 1994). In *Straub*, an unmarried woman decided that she wanted a child of her own. She engaged the defendant to father her child. Before undertaking to do so, however, the father required the unmarried woman to sign an agreement that would hold him harmless for emotional and financial support of a child which might result from their relationship. In due time, nature took its course and a child was born. The court in *Straub* stated:

> Indiana has long recognized the obligation of both parents to support their children. (Citations omitted). *In the Matter of M.D.H.*, 437 N.E.2d 119, 126, (Ind. App.1982) the court noted that current statutory provisions relating to support orders for legitimate and illegitimate children are virtually identical. The court stated, '[A] parent's obligation to support his minor child, legitimate or illegitimate, is a basic tenet recognized in this state by statutes that provide civil and criminal sanctions against parents who neglect such duty....' *Id.* at 127. In addition, there is a well-established common-law duty and obligation of a father to assist in the support of his children.... It is apparent that our legislature has created a strong current public policy (and not merely maintained an ancient one) with the object of protecting the rights of children from the whims of their parents and the power of the state.

The court found that the purported agreement between the parties as it pertains to the support of the child was void as a matter of public policy. We find no meaningful distinction between the public policy of Indiana in this regard and the public policy of Tennessee. We, therefore, find *Straub* to be compellingly persuasive.

■ We find and hold that agreements, incorporated in court decrees or otherwise, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy as established by the General Assembly. According-

ly, we find that the provision in the marital dissolution agreement between the parties in this case, insofar as it relieves the father of his child support obligation, is void.

■ We wish to further state that a child or children born to a marriage cannot be rendered illegitimate, directly or indirectly, in any divorce action or other proceeding unless the child or children are made parties to the action, afforded the protection of a *guardian ad litem*, and counsel, if necessary.

We affirm the judgment of the trial court. Costs of this appeal are taxed to the appellant and this cause is remanded to the trial court for the collection thereof and for such other and further action as may be necessary.

GODDARD, P.J., concurs.

SUSANO, J., concurs in separate opinion.

SUSANO, Judge, concurring.

I wholeheartedly agree with the result reached by the majority and the reasoning advanced to support that result. I also believe that the trial court's decision can be justified as a proper response to the appellee's Tenn.R.Civ.P. 60 motion. I believe that the motion was properly predicated on Tenn. R.Civ.P. 60.02(3), i.e., the "judgment is void"; was "made within a reasonable time"; and was sustained by the clear and convincing proof, i.e., the results of the blood tests and the admission of John William Witt that he is the father of Dustin Levi Witt. This proof convinces me that the parties joined in a blatant untruth in their marital dissolution agreement, and that their agreement to bastardize their child was, consequently, against the public policy of this state. Hence, it is void for all the reasons mentioned by the majority.