IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2000 Session

## STATE OF TENNESSEE, ex rel. CANDACE F. WEST v. GLEN D. FLOYD, JR.

**Appeal from the Chancery Court for Lewis County**
**Nos. 2803 & 3878      Russ Heldman, Chancellor**

---

**No. M1999-00334-COA-R3-CV - Filed April 11, 2001**

---

In this case, the appellant, having signed a Marital Dissolution Agreement later incorporated into a divorce decree, seeks by Rule 60 motion to have a portion of the decree dealing with the paternity of a child conceived while the parties were married, and born after the parties were divorced, voided as against public policy. Blood tests have conclusively excluded the man who the appellant had an extramarital affair with, as the father of the child. The trial court dismissed the appellant's petition pursuant to Tenn. R. Civ. P. Rule 41 motion. On appeal, we reverse the Chancellor, remand this case for further proceedings in conformity with this opinion, and order the appellee to undergo blood tests to determine the parentage of the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR., J., joined.

Paul G. Summers, Attorney General & Reporter; Stuart Wilson-Patton, Assistant Attorney General, for the appellant, State of Tennessee, ex rel., Candace F. West; and Douglas Thompson Bates, III, Centerville, Tennessee, for the appellant, Candace F. West.

Donald W. Schwendimann, Hohenwald, Tennessee, for the appellee, Glen D. Floyd, Jr.

### OPINION

The parties married on August 25, 1989. At the time the parties were married, the appellant was seventeen years of age and the appellee was twenty-three years of age. In May 1990, the appellant had sexual relations with one of the parties' close friends, Terry Curtis. The appellant became pregnant. It was possible that the child could have been fathered by the appellee, her husband at the time, or by Terry Curtis. The appellant and the appellee had not planned to conceive a child so early in their marriage.

The appellant confided in one of the parties' close friends, Conchita Curtis, Terry Curtis' wife, that she was not sure who the father of her unborn child was. Mrs. Curtis in turn told Angela and Floyd, Sr., the appellee's parents. Subsequently, the appellant's father, Paul Gandy, phoned Floyd, Sr. and told him that the appellant had engaged in sexual relations with Terry Curtis, Conchita Curtis' then husband. Floyd, Sr. called a meeting the next day with his son, appellee, and Conchita Curtis to drop "two bombs." Floyd, Sr. told the appellee that his wife, appellant, had sexual relations with another man, and then proceeded to tell Conchita Curtis the other man was her husband, Terry Curtis. The parties immediately separated as did Conchita and Terry Curtis. The appellant desired to reconcile but the appellee was unwilling and refused to accept responsibility for the unborn child, or to acknowledge that he could be the father.

On October 17, 1990, the appellee filed a Complaint for Divorce stating: "There are no children born to this marriage, although wife is currently expecting a child and is in her fifth month of pregnancy; however, the parties recognize and agree that plaintiff is not the father of this fetus" and "[t]hat the Court, in its order, provide that the plaintiff is not the father of the child which the defendant is now carrying and that he will not have any rights to or obligations for said child prior to or subsequent to its birth, and the defendant will assume all responsibility for the support and maintenance of said child." A Marital Dissolution Agreement was entered into by both parties which stated:

> The parties recognize and agree that, at the time of entering into this agreement, wife is pregnant with a child, and the Plaintiff, husband, is not, in fact, the father of this child. Therefore, husband shall not have any rights to or obligations for said child, either prior to or subsequent to its birth, and the Defendant, wife, shall be solely responsible for all decisions relating to the care, welfare, and support and maintenance of said child.

On December 19, 1990, a Final Judgment was entered which incorporated the Marital Dissolution Agreement stating:

> It is further ordered and adjudged that the plaintiff, Glen Dale Floyd, Jr., is not the father of the child which the defendant, is now carrying, and Glen Dale Floyd, Jr., shall not have any rights to or obligations for said child, either prior to or subsequent to its birth, and the defendant, Candace Faith Floyd, shall be solely responsible for the support and maintenance of said child.

On February 16, 1991, the appellant gave birth to the child, Benjamin Terance Gandy. Mr. Curtis was at the hospital when the child was born.

The appellant and Terry Curtis were married in August 1991. The appellant and Terry Curtis had a child together during their marriage, Noah Lindsey Curtis. On April 8, 1996, the appellant and Terry Curtis were divorced. The Marital Dissolution Agreement between the appellant and Terry Curtis stated in pertinent part:

VI. CHILD CUSTODY AND VISITATION The wife shall have custody of the parties' minor child, with the husband to have visitation every other weekend from 5:00 P.M. Friday until 5:00 P.M. the following Sunday, as well as every other major holiday, one week at Christmas, and one-half of the child's summer vacation and all other times mutually agreed on between the parties. **In addition, the husband shall be allowed to visit with his step-child, who is in the custody of the wife**, with said visitation to coincide with the above visitation.

VII. CHILD SUPPORT The husband shall pay directly to the wife the sum of $25.00 per week, beginning upon the execution of this agreement and each week thereafter; and, in addition, the husband shall maintain medical insurance on the parties' child, **as well as the husband's step-child** in the custody of the wife. Each party will pay one-half of all medical expenses not covered by said insurance. Furthermore, the parties agree that **they would like the name of the husband's step-child, Benjamin Terance Gandy, to be changed to Benjamin Terance Curtis**, in that the husband is the only father that the child has ever known and will be supporting him and visiting with him throughout the child's minority. It is understood and agreed that the husband shall be allowed to claim one child every other year for income tax purposes beginning in 1996.

The amount of child support agreed upon between the parties does not conform to the child support guidelines, but the parties agree to the present arrangement of $25.00 per week until some of the parties' debts have been reduced.

The appellee married one of the appellant's best friends. In 1993, just after the birth of the appellee's first daughter, the appellant mailed a picture of the child, Benjamin Gandy, to the appellee's and his second wife's residence.

On October 1, 1998, the appellant, Terry Curtis, and Benjamin Gandy, agreed to submit to genetic testing to determine Benjamin's parentage. The genetic testing conclusively excluded Terry Curtis as Benjamin's father. Appellant has since married Mr. West.

The State of Tennessee represents the interests of the appellant pursuant to Title IV-D of the Social Security Act, 42 U.S.C. Sections 651, et seq. On January 11, 1999, the State of Tennessee, on behalf of the appellant, filed a Petition to Establish Paternity and a Motion to Set Aside Judgment pursuant to Tenn. R. Civ. P. 60 asking the court to set aside the portion of the parties' Marital Dissolution Agreement and divorce decree relating to the unborn child. Rule 60.02 provides as follows:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons . . . (3) the judgment is void . . . (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a

reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered and/or taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

Tenn. R. Civ. P. 60.02.

On March 4, 1999, the State, on behalf of the appellant, filed a Motion for Genetic Testing pursuant to Tenn. Code Ann. § 24-7-112. Also, on that date, the Affidavit of the petitioner was filed stating:

Comes now the Petitioner, Candace F. West, by and through Counsel for the State of Tennessee, being first duly sworn, states as follows:

1.  I am the Petitioner in this cause.
2.  I am the natural mother of the minor child, Benjamin Terance Gandy.
3.  The Respondent, Glen D. Floyd, Jr. and I were married at the time I became pregnant with the minor child, Benjamin Terance Gandy.
4.  The minor child, Benjamin Terance Gandy was born to me within 300 days of my divorce from the Respondent, Glen D. Floyd, Jr.
5.  The Respondent, Glen D. Floyd, Jr. is the father of the minor child, Benjamin Terance Gandy.

On April 29, 1999, the State on behalf of the appellant, filed a Motion for Appointment of Guardian ad Litem for the minor child.

On June 4, 1999, the trial court denied the Motion for Genetic Testing. The trial court held that genetic testing would be ordered if the State prevailed on its Motion to Set Aside Judgment. Further on that date, the Motion for Guardian ad Litem was denied and to date, the child's interests have never been represented by a guardian ad litem.

The motions were set to be heard on June 7, 1999. Following some in court testimony of the appellant, the hearing was continued so that the appellant could obtain private counsel.

In addition to the Attorney General's office, the appellant is represented by a private attorney upon the recommendation of the Chancellor on June 7, 1999. An order followed the hearing stating:

After argument of counsel and during the testimony of the Petitioner, Candace F. West, the proceeding was stopped and the Honorable Chancellor discussed the case with counsel for all parties in chambers. At that time, it was

discussed that the constitutional rights of the Petitioner, Candace F. West, needed to be explained to her by private counsel.

At the continuation of the hearing on August 30, 1999, the Chancellor denied the appellant's Motion to Set Aside Judgment and dismissed the Petition to Establish Paternity.

The trial judge entered a final judgment on November 17, 1999, stating in pertinent part as follows:

> The rebuttable presumption found in T.C.A. 36-2-304(a)(1) is not applicable in this case because the statute was enacted after the divorce of these parties and entry of the divorce judgment which finds that Glen Dale Floyd, Jr., is not the father of Candace Faith West's child, Benjamin Terance Curtis, and such presumption, even if it were applicable, is contrary to the clear and convincing evidence as well as the preponderance of all the evidence.

> The actions of Candace Faith West herself, as proved at the hearings, and her testimony have rebutted the presumption, if one ever existed by clear and convincing evidence and the preponderance of the evidence that Glen Dale Floyd, Jr. is the father of Plaintiff's child, Benjamin Terance Curtis.

> This Court "alone has the opportunity to observe the appearance and the demeanor of the witnesses." Candace Faith West was not a credible witness, is an untruthful person, and has been untruthful in her testimony before the Court. Her testimony is given no weight whatsoever. Glen Dale Floyd, Jr., was highly credible and honest, and his testimony is given great weight. *See*, *e.g.*, *Wright-Miller v. Miller*, 984 S.W.2d 936, 942 (Tenn. App. 1999); *Rice v. Rice*, 983 S.W.2d 680, 682 (Tenn. App. 1998); *Mimms v. Mimms*, 780 S.W.2d 739, 744 (Tenn. App. 1989).

> Neither the sworn motion, sworn petition nor affidavit of Candace Faith West meets the requirements of T.C.A. 24-7-112(a)(1)(A)(i) because neither states sufficient "facts establishing a reasonable possibility of the requisite sexual contact between the parties." In fact, the affidavit is vague and does not affirmatively state that there was any requisite sexual contact between the parties to conceive Benjamin Terance Curtis. The affidavit also states an incompetent opinion as to paternity which the Court finds to be untrue and incorrect because of the preponderance of all the evidence at the hearings and because of Candace Faith West's untruthfulness and lack of credibility.
> 
> . . . .
> 
> It would be grossly inequitable and unconscionable for the Court to order Glen Dale Floyd, Jr. to submit to paternity testing after all the evidence is considered, including Candace Faith West's untruthfulness. It is clearly "equitable" that the December 19, 1990, divorce judgment have prospective application, and it would be

patently inequitable for it not to have prospective application. *See* T.R.C.P. 60.02(4). Glen Dale Floyd, Jr., is not the father of Candace Faith West's child, Benjamin Terance Curtis. The "Petition to Establish Paternity" must be denied.

It is not in the best interest of the child, Benjamin Terance Curtis, to be told that Glen Dale Floyd, Jr. is his father and further Candace Faith West should be enjoined and restrained from telling said child that Glen Dale Floyd, Jr. is his father or causing others in any way to do the same. *See* T.R.C.P. 65.07 and *Wilson v. Wilson*, 987 S.W.2d 555, 565-566 (Tenn. App. 1998).

The case of *Witt v. Witt*, 929 S.W.2d 360 (Tenn. App. 1996) is clearly factually distinguishable from this case and does not control the determination of this Court.

The Marital Dissolution Agreement incorporated into the Final Judgment of Divorce in *Candi Curtis v. Terry Curtis*, Lewis Chancery No. 3478, does not currently adequately and sufficiently provide for the support and maintenance of the child in question, Benjamin Terance Curtis, even though the agreement states that Terry Curtis "is the only father that the child has ever known and will be supporting him and visiting with him throughout the child's minority." Terry Curtis may be ordered to appear in court to show cause why he should not pay specific child support for said child *upon* the filing of a motion by Candace Faith West requesting a show cause order for the same in said case No. 3478, a motion which the State of Tennessee is not required to file in her behalf if it is not able, objects or declines to do so.

. . . .

Glen Dale Floyd, Jr. is awarded judgment for attorneys fees of $3,500 against Candace Faith West individually and the State of Tennessee. The State of Tennessee shall pay Glen Dale Floyd, Jr. $3,500 immediately after 30 days from entry of this judgment. If it refuses or chooses not to do so, Candace Faith West shall pay Glen Dale Floyd, Jr., $3,500 to Glen Dale Floyd, Jr.[1]

The core issue on appeal is whether a private agreement, incorporated into a court order or decree, can relieve a parent of parental obligations. The Eastern Section of this Court addressed this issue in *Witt v. Witt*, 929 S.W.2d 360 (Tenn. Ct. App. 1996), and T.C.A. § 24-7-112 was recently amended to codify the well settled public policy of Tennessee regarding this issue. Such agreements are void against the public policy of Tennessee. This public policy is without exception.

---

[1] This paragraph was subsequently vacated in its entirety by order of the court on February 28, 2000.

We hold the provisions of the Marital Dissolution Agreement incorporated into the Final Judgment in December 1990 relating to paternity void as against public policy. *See Witt v. Witt*, 929 S.W.2d 360 (Tenn. Ct. App. 1996). In *Witt*, the court stated:

> We find and hold that agreements, incorporated in court decrees or otherwise, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy as established by the General Assembly. Accordingly, we find that the provision in the marital dissolution agreement between the parties in this case, insofar as it relieves the father of his child support obligation, is void.

*Id.* at 362-63.

Thus, agreements incorporated in court decrees which relieve a natural or adoptive parent of child support obligations are void as against public policy. The court further stated: "We wish to further state that a child or children born to a marriage cannot be rendered illegitimate, directly or indirectly, in any divorce action or other proceeding unless the child or children are made parties to the action, afforded the protection of a *guardian ad litem*, and counsel, if necessary." *Id*. at 363.

We find that the holding of *Witt* applies to the present case. The Witts had one child that was born to the couple during the marriage. *Id.* at 361. The Witts divorced and entered into a Marital Dissolution Agreement. *Id.* The Witt's Marital Dissolution Agreement contained the following language:

> The parties stipulate and agree that a child was born to Kimberly Denise Witt on or about July, 1988, named Dustin Levi Witt. By her signature to this agreement, Kimberly Denise Witt hereby states that John William Witt is not the father of said child and that she was not living with John William Witt when said child was conceived. Kimberly Denise Witt hereby waives any and all child support payments which would be due and owing by John William Witt, and by this agreement and signature hereto, John William Witt acknowledges that he is not the father of said chid and hereby forfeits all parental rights to said child. Based upon this agreement and the signatures of the parties, the parties stipulate and agree tha[t] Kimberly Denise Witt shall have the exclusive care, custody and control of said minor child and that John William Witt is hereby forever relieved of any parental responsibilities toward the said Dustin Levi Witt.

*Id.*

The State, on behalf of Mrs. Witt, filed an action seeking child support and to establish paternity. *Id.* The case was first heard in front of the child support referee who ordered the parties to undergo blood tests to establish parentage. *Id.* The *Witt* case was transferred to the Circuit Court of Hamilton County. *Id.* The State filed a motion asking the court to set aside part of its order

approving the Marital Dissolution Agreement insofar as it related to the paternity of the child and sought appointment of a *guardian ad litem* for the child.  The court, pursuant to Tenn. R. Civ. P. Rule 60 entered an order setting aside the portion of its judgment dealing with the paternity of the minor child.  *Id.* at 362.  The court set aside the portion of the divorce decree forfeiting his parental rights and obligations and ordered the ex-husband to pay child support for the minor child.  *Id.*

The appellee maintains that because the *Witt* case states, "[a] violation of the public policy of this state by *both* parties justifies the court in voiding the offending parts of the decree," it does not apply to the present case.  The appellee would have this Court interpret this dicta as stating 'voiding of a marital dissolution agreement or divorce decree requires a violation of public policy by both parties.'  We do not agree with the appellee's contention that agreements which relate to paternity in child support are only void if both parties commit a fraud on the court.  In fact, in June 2000, an amendment was added to T.C.A. § 24-7-112(a)(1)(C) and 36-2-304(a)(4) providing:

> In any case, except terminations of parental rights or adoptions under title 36 or title 37, in which the paternity of a child is at issue and the question of parentage arises, and an agreed order or divorce decree has been entered finding that an individual is not the parent of the child, the finding shall not be entitled to preclusive effect unless the finding was based upon scientific tests to determine parentage which excluded the individual from parentage of the child in question.

An examination of case law and statutory law reveals that the public policy of Tennessee and the clear intention of the Tennessee Legislature is that no child can be illegitimated by written agreement or court order, regardless of the passage of time.

Therefore, the trial court erred by denying Rule 60 relief from the Final Decree of Divorce and the Marital Dissolution Agreement between the parties.

Further, the appellee maintains that *Witt* cannot be applied retroactively.  Recently, in *Cihlar v. Crawford*, No. M1999-00517-COA-R3-CV, 2000 WL 1183068 (Tenn. Ct. App. Aug. 22, 2000), we addressed the issue of retrospective application of the parenting statutes, specifically T.C.A. § 36-2-305(b)(1)(C), wherein we stated:

> Tenn. Const. art. I, § 20 prohibits the General Assembly from enacting retrospective laws or laws that impair contractual obligations.  The Tennessee Supreme Court has characterized a retrospective law as one that takes away or impairs vested rights acquired under existing laws.  *See Morris v. Gross*, 572 S.W.2d 902, 907 (Tenn. 1978); *Miller v. Sohns*, 225 Tenn. 158, 162-63, 464 S.W.2d 824, 826 (1971).  Although the characteristics of vested rights elude precise definition, the court views a vested right as one "which it is proper for the state to recognize and protect and of which the individual could not be deprived without injustice." *Morris v. Gross*, 572 S.W.2d at 905.  It also adopted a multi-factor analysis for identifying vested rights that includes consideration of the following factors: (1) whether the public interest

is advantaged or retarded by the challenged statute; (2) whether the challenged statute gives effect to or defeats the affected person's bona fide intentions or reasonable expectations, and (3) whether the statute surprises persons who have long relied on a contrary state of the law. *See Doe v. Sundquist*, 2 S.W.3d 919, 924 (Tenn. 1999).

*Cihlar v. Crawford*, No. M1999-00517-COA-R3-CV, 2000 WL 1183068 at * 13 (Tenn. Ct. App. Aug. 22, 2000).

There are five substantial interests supporting the requested genetic testing:

We have identified five substantial interests that support providing a procedure for assuring the timely and accurate resolution of parentage disputes. First, the State has an interest in eliminating uncertainty and confusion regarding a child's parentage. Second, the State has an interest in enforcing a biological father's obligation to support his children in order to prevent them from entering the welfare rolls. Third, the State has a responsibility to eliminate disparate treatment between marital and non-marital children. Fourth, the State has an interest in protecting the interests of biological fathers who have made, or are prepared to make, a substantial personal investment in their relationship with their children. Finally, the State has an interest in enabling children to ascertain the identity of their biological parents for medical or other health reasons. Accordingly, we find that the State has compelling interests that justify establishing a procedure for resolving parentage disputes and for making this procedure available to not only the child and the child's mother and her husband, but also to any man claiming to be the child's biological father.

*Id.* at * 11.

We conclude that the holding of *Witt* applies to the present case and that the parties never had the right under any law to illegitimate the child.

The next issue is whether the trial court erred in failing to apply the marital presumption of paternity and refusing to order genetic testing. Statutory enactments refining and defining presumptions of paternity of children born to parties in lawful wedlock are but declaratory of the common law.

At common law, a child born to a married woman was presumed to be the child of the woman's husband. Many jurisdictions, either by statute or court decision, viewed this presumption as conclusive absent proof of the non-access or sterility. Tennessee, however, was among the states that permitted the presumption to be rebutted by clear and convincing evidence of matters other than non-access or sterility.

*Cihlar*, 2000 WL 1183068 at * 8 (citing *Jackson v. Thornton*, 133 Tenn. 36, 39, 179 S.W. 384, 384 (1915); *Frazier v. McFerren*, 55 Tenn. App. 431, 440, 402 S.W.2d 467, 472 (1964)).

The paternity statutes changed significantly between the date of the parties' divorce decree, December 19, 1990, the time the child was born, February 16, 1991, and the date that the State on behalf of the appellant, filed the Petition to Establish Paternity and the Motion to Set Aside Judgment pursuant to Tenn. R. Civ. P. 60, January 11, 1999. In 1997, "the General Assembly recognized five rebuttable parentage presumptions. Two of these presumptions are the presumption of parentage arising from a man's marriage to a child's mother at the time of conception. *See* Tenn. Code Ann. § 36-2-304 (a)(1)." T.C.A. § 36-2-304 provides:

(a) A man is rebuttably presumed to be the father of a child if:

(1) He and the child's mother are married or have been married to each other and the child is born during the marriage or within three hundred (300) days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce;

. . . .

(b)

(3) The standard of proof in an action to rebut paternity shall be by preponderance of the evidence.

(4) In any case, except termination of parental rights or adoptions under title 36 or title 37, in which the paternity of a child is at issue and an agreed order or divorce decree has been entered finding that an individual is not the parent of the child, the finding shall not be entitled to preclusive effect unless the finding was based upon scientific tests to determine parentage which excluded the individual from parentage of the child in question.

(c) All prior presumptions of parentage established by the previous paternity and legitimation statutes and cases are abolished.

Tenn. Code Ann. § 36-2-304 (Supp. 2000). T.C.A. § 36-2-304(b)(4) became effective June 14, 1999. The marital presumption of paternity found in T.C.A. § 36-2-304 applies to the present case.

Tenn. Code Ann. § 24-7-112(a)(1)(A) provides:

In any contested paternity case, unless the individual is found to have good cause under § 454(29) of the Social Security Act (42 U.S.C. § 654(29)), the court, or the department of human services in Title IV-D child support cases, shall order the parties and the child to submit to genetic tests to determine the child's parentage upon the request of any party if the request is supported by an affidavit of the party making the request: (i) Alleging paternity, and setting forth facts establishing a reasonable possibility of the requisite sexual contact between the parties; or (ii) Denying paternity, and setting forth facts establishing a reasonable possibility of the nonexistence of sexual contact between the parties; or (iii) Denying the paternity.

Tenn. Code Ann. § 24-7-112(a)(1)(A) (Supp. 1998).

Appellant complied with the requirements of T.C.A. § 24-7-112 in the filing of her affidavit. The trial court did not have discretion in this regard. The appellant did not have the burden to prove the child's paternity. Rather, the appellee is presumed to be the father unless and until he proves by clear and convincing evidence that he is not.

The appellee is presumptively the child's father, because the child was born within three hundred (300) days of the party's divorce. The appellee did not offer any evidence rebutting the presumption that he is the child's father because the trial court did not follow the appropriate procedural guidelines.

There is no reasonable doubt that Mr. Curtis is not the child's father. According to the appellant's testimony, the appellee is the child's father. The appellant alleges she and the appellee had unprotected sexual relations during the period of conception. They had sexual relations the night of her high school graduation when the parties stayed in a Nashville hotel. Conveniently, the appellee could not recall one way or the other if they had in fact stayed in a hotel on the night of the appellant's graduation. It is presumed that appellee is the biological father of Benjamin and the burden is on the appellee to prove he is not by a preponderance of the evidence. *See* T.C.A. § 36-2-304(b)(3); *see also Harmon v. Harmon*, No. 02-A-01-9709-CH-00212, 1998 WL 835563 at * 4 (Tenn. Ct. App. Dec. 3, 1998).

Terry Curtis is not the father of this child, nor is he a party to this case. His behavior is not a proper subject for adjudication in this case and no support obligation can be enforced against him in this case and probably in no other case.

> In Tennessee, a parent is obligated to support that parent's natural and adopted minor children. *See* Tenn. Code Ann. § 36-6-101(a). In the absence of a formal adoption, a man is not obligated to provide support for a child when it is shown by clear, strong, and convincing evidence that he is not the natural parent of the child.

*Harmon*, 1998 WL 835563 at * 5.

The judgment of the trial court is reversed and the motion of the plaintiff filed under Rule 60 T.R.C.P. is granted. The motion for genetic testing of March 4, 1999 is granted. The case is remanded to the trial court for such further proceedings as may be necessary or proper after the results of genetic testing are known. Costs on appeal are assessed to the appellee.

_____
WILLIAM B. CAIN, JUDGE

-11-