# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 8, 2007 Session

## STATE OF TENNESSEE *ex rel*, PEGGY DOREEN (HUNN) FLATT v. JERRY KEITH FLATT

### Direct Appeal from the General Sessions Court for McNairy County
### No. 7450    Bob Gray, Judge

---

### No. W2007-01376-COA-R3-CV - Filed March 27, 2008

---

This appeal involves a child support obligation. The mother and father had three minor children. When the parties divorced, they entered into a marital dissolution agreement and a permanent parenting plan, which were approved by the divorce decree. Relevant to this appeal, the parties owned a newer residence, which was their marital home, and also an older residence, which had been listed for sale. The permanent parenting plan provided that it would not become effective until the older residence was sold. The parties agreed that the mother and the three children would be allowed to continue living with the father in the newer residence after the divorce until the older residence was sold. The father would be paying several marital debts until the older home sold, including the mortgage on the older home. However, the parenting plan provided that the father's obligation to pay child support would not begin until the older home was sold. The mother and children soon moved out of the marital home and into the older residence. Pursuant to the agreement, the father had no obligation to pay child support because the older residence had not been sold. Six weeks after the final divorce decree was entered, the mother filed a motion to set aside the divorce decree and parenting plan, claiming that the parties were not abiding by the decree and the father was not paying any child support. The mother began receiving public assistance benefits, and the State of Tennessee Department of Human Services filed a petition on her behalf seeking to modify the father's child support obligation, claiming that the agreement relieving him of his duty to pay child support was void and that a significant variance existed between his current obligation and the Child Support Guidelines. The trial court entered a default order requiring the father to pay child support directly to the mother, but later set it aside, leaving the father with only his obligation, pursuant to the marital dissolution agreement, to pay the marital debts until the older residence sold. The State appeals. We reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the General Sessions Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and JOHN EVERETT WILLIAMS, Sp. J., joined.

Robert E. Cooper, Jr, Attorney General and Reporter, Warren Jasper, Assistant Attorney General, Nashville, TN, for Appellant

C. Mark Donahoe, Magan White, Jackson, TN, for Appellee

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

Jerry Keith Flatt ("Father") and Peggy Doreen Hunn Flatt ("Mother") were married in 1984 and had three children during their marriage. On July 17, 2003, Father filed a complaint for divorce. At that time, the parties' children were ages four, nine, and eleven. A temporary parenting plan was entered, naming Father primary residential parent and Mother the alternate residential parent. Mother was ordered to pay temporary child support to Father "in the amount of 41% of her gross [income] per week." It is not clear from the record how much income either parent earned.

A final decree of divorce was entered on September 11, 2003, granting a divorce to both parties on stipulated grounds. The decree simply provided that a permanent parenting plan entered into by the parties was "fully approved, ratified and confirmed by the Court in all respects, the same effectuating the best interest and welfare of said three minor children." The decree similarly "approved, ratified and confirmed" a marital dissolution agreement executed by the parties that settled all of their property rights and other issues.

Relevant to this appeal, the parties owned two real properties that were marital assets: the marital home or "New Residence," and the "Post Office Road Residence." Both properties were encumbered. According to the marital dissolution agreement's division of marital property, Father received the New Residence and assumed the $198,000 lien on the property. However, the marital dissolution agreement further provided:

> [Mother] shall be allowed to reside in said residence with the [Father] and the parties' children until the "Post Office Road Residence", as hereinafter described, is sold by [Mother] or until [Mother] elects to permanently remove herself from the residence. During this period [Father] shall be solely responsible for the utility payments, upkeep of the residence and other household living expenses.

-2-

The Post Office Road Residence was conveyed to Mother. It was already being offered for sale at a price of $70,000. This property was encumbered by a deed of trust with a $49,000 payoff balance, with payments being $850 per month. Under the section of the marital dissolution agreement addressing marital debts, Father was to make the monthly payments on the Post Office Road Residence until it was sold. Upon the sale of the property, the mortgage would be paid in full from the sale proceeds, and Mother would receive the balance of the proceeds. The "DEBTS" section of the agreement also provided that Father would pay the marital debt on Mother's vehicle until the Post Office Road Residence was sold, and upon sale of the residence, Mother would pay off the balance owed on the vehicle. In addition, Father would pay the monthly installments owed on the children's orthodontic bills until the Post Office Road Residence sold, and Mother would assume one-half of the monthly payments after the residence was sold.

The permanent parenting plan provided:

> This Plan of parenting will commence upon the sale and disposition of the parties' real property referred to as the "Post Office Road Residence" in Paragraph 15 of the parties' Marital Dissolution Agreement, which according to said Agreement the Mother shall reside with the Father and the children in the real property referred to as the "New Residence" in Paragraph 15 of said MDA until the "Post Office Road Residence" is sold.

Once the parenting plan became effective, upon the sale of the Post Office Road Residence, then Mother was to have responsibility for the care of the children, except on Father's scheduled days off from work, which included fourteen days per month. The parties would basically alternate holiday visitation and split time equally during breaks from school. Father would pay child support directly to Mother in the amount of $430 every two weeks.[1] However, the parenting plan specifically provided that child support payments would begin on the first day of the calendar month after the Post Office Road Residence was sold, and "then and not until then" would Father pay child support. After the Post Office Road Residence sold, Father would also be responsible for maintaining medical insurance for the children, dental and orthodontic care, if provided through his employer, and pay one-half of the children's uncovered medical, dental, and eye care expenses.

On October 28, 2003, approximately six weeks after the final divorce decree was entered, Mother filed a motion for contempt and moved to set aside the final decree of divorce and permanent parenting plan. Mother alleged that both parties had failed to honor aspects of the divorce decree,

---

[1] Regarding the amount of child support, the parenting plan provided:
> The parties acknowledge that the above child support is a deviation of the Tennessee Child Support Guidelines as a result of the children being more in the care, custody and supervision of the Father as contemplated by the Guidelines, , [sic] and also as a result of the Father paying and discharging almost all of the substantial outstanding marital debts and obligations of the parties.

However, there is no indication as to what amount of child support would have been due under the Guidelines.

marital dissolution agreement, and permanent parenting plan. Apparently, Mother had moved out of the New Residence at some point, as she specifically alleged that Father had moved his girlfriend into the New Residence, failed to visit the children, and failed to pay child support. Because the Post Office Road Residence had not been sold, the permanent parenting plan was not yet effective. Mother asked the court to hold a "full trial on the merits regarding all aspects of this divorce." Father subsequently filed a motion for contempt alleging that Mother refused to allow the sale of the Post Office Road Residence when Father produced a buyer, and that Mother refused to allow Father to visit the children. In another motion for contempt, Father alleged that Mother had moved into the Post Office Road Residence instead of selling it.

On February 17, 2004, the State of Tennessee Department of Human Services ("DHS") filed an Administrative Order to Redirect Child Support Payments in the trial court. The Administrative Order was filed pursuant to Tennessee Code Annotated section 36-5-803[2] and ordered all future support payments to be paid to the Central Child Support Receipting Unit in Nashville. Mother was receiving Title IV-D services and had participated in state-sponsored public assistance programs, including receiving TANF benefits and transitional Medicaid. A copy of the Administrative Order had been mailed to Father on January 23, 2004. The Order stated that Father should send $430 payments every other week, and "no credit shall be given for any payments made by you or by another person on your behalf directly to the custodial parent."

On March 16, 2004, DHS filed a petition for modification of child support on behalf of Mother. The petition alleged that there was a significant variance between the amount of child support currently ordered and the Tennessee Child Support Guidelines such that a modification of child support was justified.

Following a hearing on DHS's petition to modify child support, which Father did not attend, the court entered a "Default Order Modifying Child Support," which set Father's child support obligation at $786 per month and ordered him to pay $25 per month toward an arrearage of $6,288 that had accrued since November of 2003. This amount would be paid by wage assignment to the State Disbursement Unit.

Father then filed a motion to reconsider and a motion to set aside the default order, claiming that his attorney had notified the court that he was unavailable for the hearing date, and that the default order was entered "inadvertently." Father claimed that he did not owe any child support to

---

[2] Tennessee Code Annotated section 36-5-803 provides:
> (a) The commissioner's authorized representative, or the department's Title IV-D contractor, is authorized to issue an administrative order to direct the obligor or other payor in Title IV-D child support cases to change the payee to the clerk or to the department. Notice of the order shall be provided by the department to the obligor and the obligee.
> (b) A copy of the administrative order issued pursuant to this section shall be sent to the clerk of the court that issued the original order and the administrative order shall be entered in the court record.

Mother because the parenting plan provided that he was not obligated to make such payments until Mother sold the Post Office Road Residence, and she had not yet sold it.

Following another hearing, the trial court entered an order on August 26, 2004, providing that the divorce decree was temporarily modified to allow Father visitation with the children every other weekend and on alternating holidays. The court set aside the "Default Child Support Order" entered by DHS and ordered the parties to attend mediation on the issues of child custody and child support. The order stated that Father was to continue making the payments on the Post Office Road Residence.

Father filed a petition to modify the divorce decree, alleging that a material change in the parties' circumstances had occurred to justify a change in primary custody to Father. He also asked that Mother be ordered to pay child support.

The parties attended mediation but were unable to resolve their disputes. The trial court held another hearing on October 3, 2005, but DHS was not notified of this hearing. The trial court entered an order on November 22, 2005, awarding Father visitation with the children every other weekend and stating that "the Court's previous Child Support Order is to remain in effect until further orders of the Court." It is not clear what "Child Support Order" this order referred to, however, as the "Default Child Support Order" had been previously set aside, and the only other document in the record providing for the payment of "child support" was the permanent parenting plan, which by its terms, did not take effect until the Post Office Road Residence was sold.

DHS filed a motion to alter or amend the order on December 9, 2005, claiming that it did not receive notice of the previous hearing. DHS alleged that the parenting plan was not in effect yet because the Post Office Road Residence had not been sold; therefore, there was no child support order in effect. DHS further alleged that the provisions of the parenting plan were void because they allowed the parties to avoid their child support obligations, and there were not sufficient findings of fact in the order to support a deviation from the Guidelines. DHS requested that Father be ordered to pay $430 every two weeks to the Child Support Receipting Unit in Nashville, and that child support arrearages be calculated since the date of the parties' separation.

The trial court entered another order on January 12, 2006. Both parties were found to be in contempt and ordered to pay his or her own attorney's fees. The judge ordered the parties to immediately list the Post Office Road Residence with a real estate agent for a maximum listing of six months, and if the property was not sold within that time, it was to be sold at public auction. Father was awarded standard visitation with the children coinciding with the weekends he was not working. The order further provided:

> [Father] is to continue to pay the regularly scheduled payments on the post office property until it sells in lieu of child support as previously ordered by this Court. Upon sale of the property, [Father] is to then pay child support based on the Child Support Guidelines.

An order denying DHS's motion to alter or amend was entered on May 2, 2006, and made final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. DHS timely filed a notice of appeal to this Court. Apparently, the Post Office Road Residence was sold while this appeal was pending, and Father now pays child support directly to the Child Support Receipting Unit.

## II. ISSUES PRESENTED

DHS presents the following issue for review: "Whether the trial court erred by approving a child support agreement not in accordance with the law." For the following reasons, we reverse the decision of the trial court and remand for further proceedings.

## III. DISCUSSION

DHS contends that the trial court erred by approving the permanent parenting plan and marital dissolution agreement because they were void agreements allowing Father to avoid his child support obligation altogether for an indefinite period of time. DHS also points to the fact that the trial court did not set forth any factual or legal basis for approving the child support provision that deviated from the Child Support Guidelines.[3] Again, the parenting plan and marital dissolution agreement provided that Mother and the children could live with Father in the New Residence until the Post Office Road Residence was sold, or until Mother elected to remove herself from the residence. During that time, Father would be "solely responsible for the utility payments, upkeep of the residence and other household living expenses." Father would also pay certain marital debts until the Post Office Road Residence was sold, but he would not pay child support during that time.

Tennessee Code Annotated section 36-6-404(a) provides that every final decree for divorce involving a minor child must incorporate a permanent parenting plan. In addition, Tennessee Code Annotated section 36-5-101(j) (formerly subsection (h)) specifically provides that the parties' agreement as to child support may be affirmed, ratified, and incorporated into the divorce decree. This statute contemplates that the child support agreement will be: (1) written, (2) approved by the court, (3) incorporated into a court order, and (4) contain an acknowledgment by the parties that they may not alter the agreement without court approval. *Berryhill v. Rhodes*, 21 S.W.3d 188, 191 (Tenn. 2000). However, a child's right to support cannot be bargained away by a parent to the child's detriment. *Id.* For example, we have previously held that a marital dissolution agreement providing that the mother "waives any and all child support payments which would be due and owing" was void as against the public policy of this state. *Witt v. Witt*, 929 S.W.2d 360, 361 (Tenn. Ct. App. 1996). Similarly, an agreement that one parent would not seek child support if the other would not seek alimony has been declared void. *King v. King*, No. M2001-00275-COA-R3-CV,

---

[3] On January 18, 2005, the Child Support Guidelines were substantially revised. At the time of the last hearing in this case on April 18, 2006, the revised Guidelines provided that they were applicable "in any judicial or administrative action brought . . . on or after the effective date of these rules." Tenn. Comp. R. & Regs. 1240-2-4-.01(2)(a). The filing of this action preceded the effective date of the revised Guidelines; therefore, the pre-revision Guidelines still applied.

2001 WL 1589131, at *4 (Tenn. Ct. App. Dec. 13, 2001). In another case, we refused to enforce an agreed order that stated, "Due to the parties current economic situation, child support shall not be ordered and the state guidelines shall not apply," and we affirmed the trial court's award of retroactive child support. *State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 196 (Tenn. Ct. App. 2001). "While a child support payment goes, directly or indirectly, to the custodial parent or guardian of a child, the purpose of the payment is to fulfill the non-custodial parent's obligation to contribute to the child's support." *Rutledge v. Barrett*, 802 S.W.2d 604, 607 (Tenn. 1991) (citing *Hester v. Hester*, 59 Tenn. App. 613, 620, 443 S.W.2d 28, 31 (1968)).

The Middle Section of this Court recently explained the problems that may arise when parties attempt to resolve issues of child support by agreement, and the importance of the trial court's role of approving such agreements:

> But for a few exceptions parenting plans are drafted by the parties and submitted to the trial court for approval. Thus, the fault, at least at first, for deficient parenting plans usually lies with the parties. Although the parties are usually authors of their own misfortune, it is a misfortune that also befalls the courts when one of the parties subsequently complains and we attempt to remedy the parties' mess. It is for this and other reasons the trial courts must be vigilant gate-keepers to assure compliance with the applicable child support laws so the parties do not enter into invalid agreements which may pose a threat to the welfare of children or perpetuate a fraud upon others.

*State ex rel. Woodard v. Woodard*, No. M2004-01981-COA-R3-CV, 2006 WL 1343209, at *4 (Tenn. Ct. App. May 16, 2006). When reviewing the parties' agreement, the trial court must use the Child Support Guidelines to review the adequacy of the child support provision. *Berryhill*, 21 S.W.3d at 191, n.7. The Child Support Guidelines, when properly applied, create a rebuttable presumption of the proper award of child support. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). At the time of the divorce decree in this case, Tennessee Code Annotated section 36-5-101(e)(1)(A) provided:

> If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

"These findings must be contained in the trial court's order in addition to the amount of child support that would have been required under the guidelines and the reason for the deviation from this

amount." ***Neal v. Neal***, No. M2003-02703-COA-R3-CV, 2005 WL 1819214, at *2 (Tenn. Ct. App. Aug. 2, 2005). In the absence of such findings, the Guidelines are mandatory. ***Corbett v. Corbett***, No. 03A01-9601-CH-00008, 1996 WL 480741, at *6 (Tenn. Ct. App. E.S. Aug. 26, 1996); *see also* ***Kelley v. Kelley***, No. M2004-01202-COA-R3-CV, 2005 WL 2240964, at *4 (Tenn. Ct. App. Sept. 15, 2005) (stating that in the absence of written findings by the trial court that a deviation is warranted, the court is obligated to base the child support award on the parent's actual income). When the trial court originally approved the parenting plan in this case, the Child Support Guidelines further provided:

> Stipulations presented to the court shall be reviewed by the court before approval. No hearing shall be required. However, the court shall use the guidelines in reviewing the adequacy of child support orders negotiated by the parties. The court shall require that stipulations in which the guidelines are not met must provide a justification for the deviation which takes into consideration the best interest of the child and must state the amount which would have been required under the guidelines.

Tenn. Comp. R. & Regs. 1240-2-4-.02(4).

Father contends that the parenting plan constituted a valid and enforceable agreement as to child support because it satisfied the requirements stated in ***Berryhill***, 21 S.W.3d at 191. The agreement was written, approved by the court, incorporated into the final order, and it provided that it could not be altered without court approval. Therefore, Father argues, the parties could agree that Father would not begin paying child support until the Post Office Road Residence was sold. Although the parties in this case were dealing with unique circumstances when executing their parenting plan, they could not simply relieve Father from paying any child support until the parties could sell one of their real properties.[4] The parenting plan allowed Father to avoid paying child support even if Mother and the children moved out of the New Residence, so long as the Post Office Road Residence had not been sold. We believe this arrangement constituted an impermissible

---

[4] We recognize that the Guidelines are designed to apply to situations where children live primarily with one parent but stay overnight with the other parent at least as often as every other weekend, two weeks during the summer, and two weeks during holidays, and it may be appropriate to award less child support when residential time is divided equally between the two parents. ***Hopkins v. Hopkins***, 152 S.W.3d 447, 450 (Tenn. 2004); Tenn. Comp. R. & Regs. 1240-2-4-.02(6). Courts should make a case-by-case determination as to the appropriate amount of support in situations in which overnight time is divided more equally between the parents. Tenn. Comp. R. & Regs. 1240-2-4-.02(6). "Downward deviation could conceivably include even a downward deviation to zero child support," ***Gray v. Gray***, 78 S.W.3d 881, 884 (Tenn. 2002), but there is no bright-line rule that no child support is owed when a child's residential time is divided equally between the parents. ***Hopkins***, 152 S.W.3d at 449. In this case, though, the parties did not agree that Father's child support obligation was merely suspended while the children and Mother continued to live with him, or while they shared equal parenting time. Father's obligation to pay child support was conditioned on the occurrence of an event that did not relate to the time that Father spent with the children. In other words, his obligation to support the children was suspended regardless of their whereabouts or their needs.

"bargaining away" of the children's right to support from Father, and under the reasoning of ***Witt***, ***King***, and ***Miller***, discussed above, the agreement was void.

On appeal, Father argues that he was effectively required to pay child support in the form of paying the mortgage payments on the Post Office Road Residence. He claims that rather than sending child support directly to Mother, he was sending his child support payments directly to the mortgage holder on the Post Office Road Residence to ensure that the children had adequate housing. We find that Father's argument is illogical given the fact that, according to the marital dissolution agreement, Father agreed to pay the mortgage payments on the Post Office Road Residence when the children were still living with him and Mother in the New Residence. It is true that Father agreed to pay several monthly bills in the section of the marital dissolution agreement entitled "DEBTS," and one of those "marital debts" included the mortgage payment on the Post Office Road Residence. Nowhere in the agreement did the parties refer to Father's obligation to pay the mortgage as child support or a form of child support. Instead, the parenting plan stated that when the Post Office Road Residence was sold, "then and not until then the . . . father will pay child support . . . ." From our review of the parenting plan and marital dissolution agreement, we conclude that Father had no child support obligation until the Post Office Road Residence was sold. In any event, we have previously held that a parent's payments directly to a mortgage holder should not be considered as child support.[5] *See, e.g.*, ***State ex rel. Buckner v. Buckner***, No. E2000-00959-COA-R3-CV, 2000 WL 1207196, at *3 (Tenn. Ct. App. Aug. 24, 2000); ***Corbett v. Corbett***, No. 03A01-9601-CH-00008, 1996 WL 480741, at *6 (Tenn. Ct. App. E.S. Aug. 26, 1996); *see also* ***McDowell v. McDowell***, 586 S.W.2d 110, 112 (Tenn. 1979) ("We think it improper to make a child support award by decreeing that a parent will assume a bank debt of the custodial parent.")

In this case, Father was relieved of his child support obligation for an indefinite period of time. As noted in ***Berryhill***, when the trial court approves and incorporates an agreement as to child support, the trial court must use the Guidelines to review the adequacy of the child support provision. 21 S.W.3d at 191. Any deviation from the Guidelines must be explicitly stated on the record. ***State ex rel. Wrzesniewski v. Miller***, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001). In this case, there is nothing in the record to suggest what Father's child support obligation would have been pursuant to the Child Support Guidelines. In fact, there are no calculations in the record regarding child support, or even an indication as to what type of occupation and income each parent had. There are no "written or specific" reasons listed in the divorce decree as to why application of the Child

---

[5] Even if we were to accept Father's argument that he was paying "child support" by paying the mortgage, once DHS notified the parties of the Administrative Order to Redirect Child Support Payments, Father would not have received credit toward his child support obligation by paying the mortgage. Tennessee Code Annotated section 36-5-101(d)(7), which was formerly subsection (a)(4)(E), provides:

> In all Title IV-D child support cases, child support payments shall be made by the obligor to the department. . . . In the event that a Title IV-D case is instituted subsequent to the establishment of an order of child support, the department shall notify the obligor and obligee and the appropriate clerk of this fact, and all payments of child support in Title IV-D cases shall be made by the obligor to the department, without further order of the court.

Support Guidelines would have been "unjust or inappropriate" in this particular case, or how this child support provision actually served the children's best interests. The divorce decree merely stated that the parenting plan was approved, "the same effectuating the best interest and welfare of said three minor children." However, the permanent parenting plan, by its terms, would not take effect until the Post Office Road Residence was sold.[6] As previously mentioned, every final decree for divorce involving a minor child must incorporate a permanent parenting plan, and every permanent parenting plan must assign a primary residential parent. *Gray*, 78 S.W.3d at 883(citing Tenn. Code Ann. §§ 36-6-402(5), 36-6-404(a)). Even when residential time is divided equally between the parents, the parenting plan must designate one parent as the primary residential parent. *Id.* The naming of a primary residential parent controls the issue of child support, and such designation is also necessary to comply with state and federal statutes. *Hopkins*, 152 S.W.3d at 450, n.3. In this case, the divorce decree did state that it incorporated a "permanent parenting plan," but by the parenting plan's own terms, it would not "commence" until the occurrence of a future event. In effect, then, there was no permanent parenting plan in existence for over three years following the divorce. The result was that there was no primary residential parent designated, as required by statute, and there was no child support obligation in effect. We find that the provisions of the divorce decree providing for a "permanent parenting plan" that was not effective, and allowing Father to avoid his child support obligation indefinitely, are void.

Because the final order did not include an effective permanent parenting plan, it did not name a primary residential parent, it did not set child support, and it did not state sufficient reasons for deviating from the Child Support Guidelines, we find that this case must be reversed and remanded. We remand the case for entry of a valid permanent parenting plan and for a determination, pursuant to Tennessee Code Annotated section 36-5-101, of child support owed by Father under the Child Support Guidelines from the date of divorce until Father began paying child support to the Child Support Receipting Unit. If the court finds it appropriate to deviate from the presumptive amount under the Child Support Guidelines, it should make findings of fact justifying its conclusion.

## IV. CONCLUSION

For the aforementioned reasons, we reverse the decision of the trial court and remand for further proceedings. Costs of this appeal are taxed to the appellee, Jerry Keith Flatt, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[6] The parties stated in the parenting plan that the amount of child support Father would pay deviated from the Guidelines because Father would have more visitation with the children and had paid most of the parties' marital debts. However, this statement appears to address the $430 bi-monthly payments Father would begin paying after the Post Office Road Residence was sold. This clause does not state what Father's obligation would have been had the Guidelines been followed.