IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2026 Session

**KARLA M. REICHERT v. DAVID K. REICHERT**

**Appeal from the General Sessions Court for Wilson County**
**No. 2024-CV-17     A. Ensley Hagan, Jr., Judge**

_____

**No. M2025-00408-COA-R3-CV**

_____

This is a dispute over a child support obligation for a severely disabled adult child that would have terminated on the child's 25th birthday under the Marital Dissolution Agreement ("MDA"). Prior to the expiration of Father's agreed upon support obligation, the child's mother petitioned for child support to continue due to the adult child's ongoing disability and needs. Finding that the adult child was severely disabled and living with her mother prior to attaining eighteen years of age and she remains severely disabled, the trial court granted the mother's petition and ordered that the father's child support obligation be extended indefinitely. The trial court also awarded the mother a judgment of $21,700 in retroactive child support. The father appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed**

FRANK G. CLEMENT, JR., C.J., delivered the opinion of the court in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., concurred.

Bennett J. Wills, Brentwood, Tennessee, for the appellant, David K. Reichert.

Steven A. Hart, Mt. Juliet, Tennessee, and Elizabeth P. McCarter, Nashville, Tennessee for the appellee, Karla M. Reichert.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

Karla M. Reichert ("Mother") and David K. Reichert ("Father"), a married couple with one daughter, agreed to an MDA and a Permanent Parenting Plan ("PPP") filed November 17, 2015, which were incorporated in their final divorce decree filed on December 4, 2015. Their daughter, ("Daughter"), who was severely disabled, was a minor when the divorce complaint was filed by Mother and was 18 years old at the time of the

divorce. The MDA included a provision for child support from Father until Daughter's 25th birthday, at which time his obligation would terminate.

On February 18, 2022, about a month before Father's final payment was due, Mother filed a Petition to Modify Child Support and Declare Child to be Severely Disabled, alleging that Daughter "suffers from Microcephaly, Autistic Disorder and Anxiety Disorder," "functions at the level of a seven (7) year old," and "has never held a job, never lived on her own and never had a driver's license . . . . [Daughter] will probably never be able to do any of those things." Given such limitations, the petition stated that the $840.00 Daughter received in Social Security benefits at the time was insufficient for her care and maintenance and thus requested that Daughter "be classified as severely disabled and Father be required to continue to pay child support." The petition was filed in the circuit court for Wilson County. Father filed an answer opposing the petition.

On the same date, Mother filed a petition in the probate court seeking to create a conservatorship for Daughter and for Mother to be appointed conservator. The petition was granted and Mother was appointed conservator for Daughter pursuant to an order entered on October 25, 2023.

Following a contested hearing before Circuit Court Judge Clara Byrd, the court entered an order on June 3, 2024, finding Daughter to be a "severely disabled child" under Tennessee Code Annotated § 36-5-101(k)(2) and that it was "in the child's best interest for the Father to continue paying child support for the benefit of [Daughter]." The case was then transferred to the Wilson County Probate Court to be consolidated with Daughter's probate case for a determination on the amount of child support to be paid by Father. Finding that it lacked jurisdiction to establish child support, the probate court transferred the case to the General Sessions Court for Wilson County.

After the case was transferred to the general sessions court, Judge Ensley Hagan conducted a contested hearing. Pursuant to an order entered on November 19, 2024, Judge Hagan ruled as follows:

1. This Court adopts the prior findings that [Daughter] was a severely disabled child prior to her turning eighteen (18) and that Mother should be entitled to receive child support from Father. . . .

2. The Court finds that the provision in the Marital Dissolution Agreement stating child support would not extend past March 17, 2022, is not enforceable.

3. The Court finds that it is against public policy for parents to contract for child support to end on a set date when a child has an ongoing disability for which she may need support for her entire life. The Court

finds that usually child support is set in a Parenting Plan and not set in a contract such as a Marital Dissolution Agreement.

4. The Court finds that [Daughter's] medical condition is the same today as it was before she turned eighteen (18).

5. This Court has reviewed the Income and Expense Statements of both parties which includes Mother's expenses for [Daughter]. The Court finds that [Daughter] receives $943.00 per month in Social Security benefits but that amount does not cover all of her reasonable expenses.

.    .    .

9. The court finds that [Daughter] has an ongoing need for financial support but unfortunately Mr. Reichert does not have sufficient funds to pay all of the support necessary. The Court find [sic] that Mr. Reichert should continue to pay $700.00 per month for ongoing support for [Daughter]. The Court finds this support amount shall be modifiable so that Mr. Reichert can request a modification if his income is reduced.

.    .    .

14. Father should continue paying his monthly child support obligation in the amount of $700.00 on the 1st day of each month beginning November 1, 2024, and continuing each month thereafter pending further Orders of this Court.

15. That a judgment should be awarded in the amount of twenty one thousand seven hundred dollars ($21,700.00) to [Mother] against [Father] representing retroactive support[.]

Following a hearing on January 29, 2025, during which Father established, inter alia, that he had paid the arrearage judgment, Judge Hagan declared the $21,700 judgment had been satisfied by Father and ordered that the current monthly support of $700 be paid via wage assignment.

This appeal followed.

## ISSUES

Father raises the following issues:

1. Whether the trial court erred in invalidating the termination provision of the parties' MDA and imposing post-majority child support absent statutory authority.

2. Whether the trial court erred in awarding retroactive and indefinite future support in violation of Tennessee Code Annotated § 36-5-101 and the express terms of the MDA.

For her part, Mother raises one issue: "Did the trial court abuse its discretion under Tennessee Code Annotated § 36-5-101(k)(2) by awarding continued child support for a severely disabled adult child whose condition is not likely to improve?"

## STANDARD OF REVIEW

We review questions of statutory interpretation de novo. *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024). "When a statute is clear, we apply the plain meaning without complicating the task. Our obligation is simply to enforce the written language." *In re Est. of Tanner*, 295 S.W.3d 610, 613–14 (Tenn. 2009) (citations omitted). In order to do so, as explained by our Supreme Court, "[w]e give the words of a statute their 'natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (citation omitted) (quoting *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015)). Further, "[w]e endeavor to construe statutes in a reasonable manner which avoids statutory conflict. We 'must presume that the Legislature did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws.'" *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016) (citation omitted) (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

Decisions determining child support are discretionary, therefore our court will "review child support decisions using the deferential 'abuse of discretion' standard of review." *Smallman v. Smallman*, 689 S.W.3d 845, 868 (Tenn. Ct. App. 2023) (quoting *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). Applying this standard, "[w]e 'will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law,' but 'we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.'" *Id*.

## ANALYSIS

### I.

Father argues that the trial court lacked statutory authority to override the contractual provision in the MDA pursuant to which his responsibility to pay child support terminated on Daughter's 25th birthday.

In support of his argument, Father cites *Barnes v. Barnes*, 193 S.W.3d 495 (Tenn. 2006) which held that marital dissolution agreements are treated as contracts and "consistently have been found to be valid and enforceable contracts between the parties." *Id*. at 498. Father also notes that such agreements are "subject to the rules governing construction of contracts" absent a contractual defect. *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017). Thus, Father argues, because the parties negotiated and agreed to continued post-majority support for Daughter, with no alleged contractual defect, the court may not extend support past the bargained-for deadline of Daughter's 25th birthday.

Mother, who also relies on *Eberbach*, insists that contractual agreements that concern statutory issues, such as child support, are subject to modification by the courts. Specifically, Mother relies on the following holding in *Eberbach*:

> Once incorporated, issues in the MDA that are governed by statutes, such as child support during minority and alimony, lose their contractual nature and become a judgment of the court . . . The trial court retains the power and discretion to modify terms contained in the MDA relating to these statutory issues upon sufficient changes in the parties' factual circumstances. *See Archer v. Archer*, 907 S.W.2d 412, 418 (Tenn. Ct. App. 1995). However, on issues other than child support during minority and alimony, the MDA retains its contractual nature.

*Eberbach*, 535 S.W.3d at 474.

It is a well-known and longstanding legal principle that child support obligations cannot be contracted away. *See State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001). "The duty of support cannot be permanently bargained away; agreements not to seek future increases in child support are likewise void as against public policy." *Id*. (citing *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000)). The primary issue is this case is whether this maxim applies to disabled adult children.

We turn first to *Sayne v. Sayne*, 284 S.W.2d 309 (Tenn. Ct. App. 1955), wherein we allowed child support to continue for disabled adult children. After a survey of foreign jurisdictions, we adopted the logic of a Kentucky ruling, agreeing that "we see no difference in principle between the duty imposed upon the parent to support the infant and the obligation to care for the adult, who is equally, if not more, dependent upon the parent. In either case the natural as well as the legal obligation is the same, if the parent is financially able to furnish the necessary assistance." *Id*. at 426–427.

Thereafter, "a trilogy of Court of Appeals cases . . . appeared to reverse the holding in *Sayne*." *In re Conservatorship of Jones*, No. M2004-00173-COA-R3-CV, 2004 WL 2973752, at *7 (Tenn. Ct. App. Dec. 22, 2004). These cases, *Day v. Gatewood*, No. 02A01-

9805-CV-00141, 1999 WL 269928 (Tenn. Ct. App. Apr. 30, 1999), *Scott v. Scott*, No. 03A01-9708-CH-00305, 1999 WL 39506 (Tenn. Ct. App. Jan. 29, 1999), and *Kilby v. Kilby*, No. 03A01-9712-CH-00549, 1999 WL 76065 (Tenn. Ct. App. Jan. 28, 1999), held that Tennessee divorce and child custody statutes applied only to "minor" children—and that minor meant those who had not yet reached the age of 18.

Applying these holdings in *In re Conservatorship of Jones*, a case in which a parent sought to overturn a child support obligation owed to two disabled adult children, we found:

> in applying section 36-5-101(p)(2)[1] . . . a trial court has the authority to 'continue child support' for a severely disabled child only where an order awarding support was entered when the child was a minor, or as a modification of any other valid child support order. In this case, where the parties' disabled sons had turned eighteen before the divorce petition was filed, the trial court was without jurisdiction to order Father to pay child support.

2004 WL 2973752, at *13.

*Jones* was decided in 2004. In 2008, the General Assembly amended Tennessee Code Annotated § 36-5-101(k), effective July 1, 2008. The most relevant portion of the amendment, which is italicized below, reads:

> (k)(1) Except as provided in subdivision (k)(2), the court may continue child support beyond a child's minority for the benefit of a child who is handicapped or disabled, as defined by the Americans with Disabilities Act, until such child reaches twenty-one (21) years of age.
>
> (2) Provided, that such age limitation shall not apply if such child is severely disabled and living under the care and supervision of a parent, and the court determines that it is in the child's best interest to remain under such care and supervision and that the obligor is financially able to continue to pay child support. In such cases, the court may require the obligor to continue to pay child support for such period as it deems in the best interest of the child; provided, however, that, *if the severely disabled child living with a parent was disabled prior to this child attaining eighteen (18) years of age and if the child remains severely disabled at the time of entry of a final decree of divorce or legal separation, then the court may order child support regardless of the age of the child at the time of entry of the decree.*

---

[1] Tennessee Code Annotated § 36-5-101(p) was the legislative predecessor to § 36-5-101(k).

- 6 -

(3) In so doing, the court may use the child support guidelines.

Tenn. Code Ann. § 36-5-101(k) (emphasis added).

We applied the amended statute in *Niemeyer v. Niemeyer* to hold a father responsible for the support of a severely disabled adult who was 23 years old at the time of her parents' divorce. No. E2022-01690-COA-R3-CV, 2024 WL 1645829 at *7–8 (Tenn. Ct. App. Apr. 17, 2024). Finding the facts in *Niemeyer* substantially similar to those at issue here, we conclude that the general sessions court acted within its jurisdiction and discretion by extending Father's child support obligation beyond Daughter's 25th birthday.

For completeness, we acknowledge Father's contention that the general sessions judge did not specifically cite Tennessee Code Annotated § 36-5-101(k)(2) as justification for its extension of Father's support obligation, which omission, Father contends, invalidates the judgment.

While the general sessions court order does not expressly cite the statute, the circuit court order did, and the general sessions court, in its order November 19, 2024, adopted the findings of the circuit court. Those findings read in pertinent part:

2. It is clear to the Court after reviewing the expert deposition transcript of Dr. Robert W. Steves, III, that the child of the parties is a severely disabled child pursuant to T.C.A. § 36-5-101(k).

3. Dr. Robert W. Steves, III, testimony from his deposition established that [Daughter] was diagnosed with microcephaly, autism, anxiety disorder, and has an IQ level estimated between 55–70, all of which requires help with making appointments, financial decisions, and prevents [Daughter] from being able to drive.

4. Pursuant to T.C.A. § 36-5-101(k)(2) the Court determines that it is in the child's best interest to remain under the supervision of her Mother/Conservator, Karla Reichert, and it is further in the child's best interest for the Father to continue paying child support for the benefit of [Daughter].

Thus, it is readily apparent that both courts were relying on Daughter's severe disability and Tennessee Code Annotated § 36-5-101(k)(2) as the authority for extending Father's support obligation.

We also note that while specific citation of statutory authority is preferred, it is not always necessary. As we explained in *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314 (Tenn. Ct. App. May 15, 2009), "Citation of the statutory provision would

have been enormously helpful, but its omission is not fatal in and of itself if the remainder of the order is sufficiently specific." *Id*. at *9. We found that it was possible to "glean from the language in the order" that the trial court was referring to a specific statute granting them the necessary authority. *Id*. In this case it was readily apparent that the court relied upon Tennessee Code Annotated § 36-5-101(k)(2) to extend Father's support obligation.

Father also disputes the trial court's rationale that "it is against public policy for parents to contract for child support to end on a set date when a child has an ongoing disability for which she may need support for her entire life." We find no error with the trial court's statement in this context. Our courts have held that "agreements, incorporated in court decrees or otherwise, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy as established by the General Assembly," using a public policy rationale to strike down offending contracts. *Witt v. Witt*, 929 S.W.2d 360, 363 (Tenn. Ct. App. 1996).

II.

Father next argues that the judgment against him for post-majority and retroactive support is invalid because the trial court failed to make specific findings of incapacity or disability. We disagree.

As noted above, in his general sessions court order Judge Hagan explicitly adopted Circuit Court Judge Byrd's findings that Daughter was severely disabled, and those findings are more than sufficient to support the court's decision. Moreover, if and '[w]hen the trial court fails to explain the factual basis for its decisions, we may conduct a de novo review of the record to determine where the preponderance of the evidence lies[.]'" *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) (citing *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013) (other citations omitted). Having reviewed the record, we find the evidence, which we discuss below, clearly establishes the fact that Daughter is severely disabled.

Dr. Robin Pearson, Daughter's pediatrician, wrote in a letter submitted into evidence that Daughter

> will never be able to earn a living wage. She would only be able to work with the assistance of a job coach. She has never had any employment. She requires extensive supervision and support to eat with limited meal preparation. She does not know the value of money and will never be able to shop or manage her money alone. She needs assistance with wiping after bowel movements and maintaining a clean toilet. She cannot remain sanitary without assistance and consequently wears pads all the time. She cannot safely shave her legs or underarms. She is unable to provide her own transportation. She needs supervision in a parking lot as she might dart in

front of a car. She does not understand interpersonal boundaries and will be vulnerable to predators if left unsupervised.

A report submitted by Dr. Mindy Hamby described Daughter's disabilities as "autistic disorder, anxiety disorder that requires help with making appointments, financial decisions." The report also stated "patient unable to drive. Microcephaly has caused her to have a learning disability."

Daughter's physician, Dr. Robert W. Steves, III, testified that Daughter had "severe intellectual delays" and had been diagnosed with intellectual disability, microcephaly, autism, precocious puberty, insomnia, scoliosis and anxiety. Dr. Steves further testified that recently, while Daughter was briefly left alone at home between caregivers, she had caused a small kitchen fire, leading him to conclude Daughter "is a danger to herself and doesn't realize that."

A report submitted by the Guardian ad Litem, Ashley L. Jackson, stated "[Daughter's] physical and mental condition is such that would prevent her from ever living on her own or being able to financially support herself. [Mother] works away from home and it is not in [Daughter's] best interest nor is it safe for [Daughter] to stay home alone during this time. [Daughter] will need assistance with and oversight of daily tasks for the rest of her life." The report concluded that Daughter needed a conservator and recommended Mother to serve permanently in that capacity.

In the conservatorship proceeding, the probate court placed Daughter in a conservatorship based in part on the following findings:

> That [Daughter] is severely disabled as she suffers from Microcephaly, Autistic Disorder and Anxiety Disorder and does not have the mental and physical capability of caring for herself, she needs assistance in her everyday life, and [Daughter's] condition is not likely to improve in the future. Therefore, in order to ensure that the desires of [Daughter] are carried out, the court finds that [Daughter] is a disabled person[.]

The only contradictory evidence in the record is Father's testimony that Daughter is not severely disabled and that she can and should work. He also testified that Mother has made no effort to encourage Daughter to get a job and has discouraged her from being independent. However, Father's testimony is contrary to that of several medical experts and Mother. Moreover, Father has had little contact with Daughter in several years. The report of the guardian ad litem noted that Father has only seen daughter once in the past five years, which is supported by Mother's testimony. Thus, the evidence preponderates in favor of the trial court's findings.

III.

Father contends that the trial court erred by awarding a retroactive child support award contrary to Tennessee Code Annotated § 36-5-101(f)(1). The statute states, in relevant part, that child support "judgment[s] shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed."

As we explained in *Pestell v. Pestell*, No. M2005-00749-COA-R3-CV, 2006 WL 2527642 at *4 (Tenn. Ct. App. Aug. 24, 2006), this means that "a court may not alter pre-petition child support obligations." But Father fails to acknowledge that Mother filed her petition for an extension of Father's child support obligation in February of 2022, which was prior to the termination date established in the MDA. Moreover, the arrearage judgment was based on Father's support obligation after Daughter's 25th birthday, which was after the filing of the petition. Thus, the trial court's ruling was not in contravention of Tennessee Code Annotated § 36-5-101(f)(1).

IV.

Father also contends that the trial court erred by extending his child support obligation for an indefinite period. In making this argument he cites Tennessee Code Annotated § 36-5-101(k)(2) and states that courts may only continue support for disabled adult children "for such period of time as it deems in the best interest of the child." Because the trial court's order has no end date, Father contends, it exceeds its statutory authority and is thus unenforceable.

Contrary to Father's contention, when a child is found to be severely disabled under § 36-5-101(k) "support may be continued indefinitely." *Ratcliff v. Neal*, No. E2023-01152-COA-R3-CV, 2024 WL 4665448 at *4 (Tenn. Ct. App. Nov. 4, 2024).

For the foregoing reasons, we affirm the judgment of the trial court in all respects.

IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, David K. Reichert.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 10 -